FILED
2015 Aug-14  PM 04:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DANA CARDEN, INDIVIDUALLY AND FOR A CLASS OF SIMILARLY SITUATED PERSONS OR ENTITIES,** | ) ) ) ) | |
| **Plaintiffs;** | ) | **CIVIL ACTION NO.:** |
| **v.** | ) ) | |
| **THE TOWN OF HARPERSVILLE,** | ) ) ) | _____ **CLASS ACTION DEMAND FOR JURY TRIAL** |
| **Defendant.** | ) | |

**COMPLAINT**

COMES NOW, Dana Carden, (hereinafter "Plaintiff"), individually and on behalf of those similarly situated, upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters, by and through her undersigned counsel, and files this complaint as follows:

**JURISDICTION**

1.     The Court has jurisdiction over this matter because it concerns a controversy arising under the Constitution of the United States.  28 U.S.C. ' 1331.  This is a civil rights action brought under 42 U.S.C. ' '  1983 and 1988.

2.     This Court also has jurisdiction of this action by virtue of 28 U.S.C. ' ' 1343(a)(3) and 1343(a)(4), authorizing jurisdiction of claims brought under 42 U.S.C. ' 1983 to enforce civil rights guaranteed by the United States Constitution.  The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. '  1367.

3.     This action also seeks a declaratory judgment pursuant to 28 U.S.C. ' '  2201 and 2022.

4.      Venue in this judicial district is proper pursuant to 28 U.S.C. ' 1391 (b) and (c).

## PARTIES TO THE COMPLAINT

5.      The plaintiff Dana Carden is an individual resident of Sylacauga, Alabama, Talladega County, Alabama.

6.      The classes which the individual Plaintiff seeks to represent consist of:

> All individuals who have been assigned by the Harpersville Municipal Court to "probation" with Judicial Correction Services (JCS) for the collection of fines.

> AND

> All individuals who, despite their indigency, were incarcerated without consideration of their indigency for failure to pay fines, charges and fees to Harpersville.

7.      The Town of Harpersville, Alabama, ("Harpersville") is a municipal corporation located within Shelby County, Alabama. The City Council and Mayor control the policy making for Harpersville, and also hired the municipal court judge and contracted for the services of JCS, a private probation company, to collect its municipal court fines.

## FACTS

8.      The Plaintiff brings this action because the policy and practices of Harpersville have violated the Plaintiff's statutory and constitutional rights and those of persons similarly situated.

9.      The policies and practices of the City of Harpersville are strikingly similar to the unconstitutional practices by which the City of Ferguson, Missouri, operated its courts and police department.  These unconstitutional policies placed priority on generating cash

for the City without regard to constitutional precepts. The Department of Justice's Civil Rights Division outlined the unconstitutional practices it discovered at the City of Ferguson in its March 4, 2015 report. (Exhibit 1)[1]

10.     Harpersville contracted with JCS which operates a "for profit" enterprise that markets its services to various municipal governments and has previously contracted with over 100 cities and towns throughout Alabama.  JCS's marketing approach emphasizes that its fees will be paid by the "offender" before the municipal court and that its efforts will improve collection of court fines and costs at no cost to the city.

11.     The City of Harpersville did not seek bids for this contract. Rather, it granted JCS this exclusive contract in violation of Ala. Const. Art. I, § 22 and Ala. Code 1975, §41-16-50.

12.     The fees required to be paid to JCS under the contract with Harpersville, are not permissible court cost and are charged to individuals in addition to fines adjudicated.

13.     The JCS approach is highly systemized and uniform throughout the Alabama municipal courts in which it operates, including Harpersville.

14.     Under the system established by JCS, its employees are not required to have criminal justice or legal training, nor are they required to have any social work education or meet any minimum law enforcement standards as is required of state probation officers. Instead, JCS requires only that its employees be 21 years old, a non felon, with two years of college who complete 40 hours of training by JCS on its processes.  On satisfying those

---

[1] Due to the many similarities between Harpersville's policies and practices that are coordinated through the city police and the city courts, sections of the DOJ report are referenced by footnotes for the court's review.

requirements, JCS employees are then labeled "Probation Officers"[2] and were previously permitted to carry the JCS issued badge in collecting its fees, court fines and costs.

15.     Harpersville, by contract and practice, unlawfully delegated to JCS many administrative and judicial functions of its municipal court, clothing it with the color of state law for the collection of court fines, costs and the JCS private fees.

16.     The agreement between Harpersville and JCS and signed by the City mayor Theoangelo Perkins attests that the Harpersville municipal "***court agrees that each court order shall provide*** for the following:

> a probation fee of $35.00 per month flat fee
>
> one time probationer set up fee of $10.00. . . . " (***emphasis added***).
>
> (Exhibit 2)

17.     Harpersville, through its mayor and council, approved the JCS contract on March 3, 2006 and continued the relationship thereafter fully aware of the practices and system of JCS and jointly participating and approving in those practices. The City of Harpersville also approved the employment of Larry Ward as a part time judge of its municipal court.

18.     On March 3, 2010, several people sued the City of Harpersville in Shelby County Circuit Court (CV-2010-900183). As a result of this lawsuit, the Harpersville Municipal Court became the subject of an ongoing investigation and serious questions were raised regarding the integrity of that court and its processes and procedures.

---

[2]In contrast, even a judicial volunteer is required to meet greater and more specific qualifications, careful screening, specific training and continual oversight established by the Administrative Office of Courts ('AOC').  See Ala. Rule of Judicial Administration Rule 42.

19.     In their initial complaint, the state court plaintiffs brought the lawsuit to obtain declaratory and injunctive relief for themselves and for those similarly treated.

20.     On July 17, 2012, the plaintiffs in CV-2010-900183 filed an amended complaint asserting class claims and requesting damages as well as injunctive relief.

21.     The state court has not yet certified a damage class in CV-2010-900183 and that case is still pending without a class certification scheduling deadline.

22.     The collection system at Harpersville continued unabated until an order of the Shelby County Circuit Court was entered on July 11, 2012 enjoining many actions of Harpersville which are more specifically set out below. (Exhibit 3). That order was followed by a decision of the Harpersville city council on August 8, 2012 to dissolve the Harpersville Municipal Court.

23.     Thereafter, on December 27, 2012, Assistant District Attorney Alan Miller filed a motion in the District Court of Shelby County requesting that the Court 'remit all outstanding fees, fines and costs and to establish this account as "Paid in Full"' for all the then existing traffic cases. (Exhibit 4). That motion was granted on December 27, 2012 by Judge Ronald Jackson, Presiding District Judge of Shelby County, who ordered that all traffic cases listed in the motion were declared PAID IN FULL and ordered that any warrant associated with the case was recalled, set aside and held for naught.

24.     Since the dissolution of the municipal court, however, Harpersville has taken no action to reimburse the many people it forced to pay illegal fees or who were imprisoned or otherwise damaged by the unlawful collection system at Harpersville.

25.     At the Harpersville Municipal Court which operated under the JCS contract and system, a person unable to fully pay fines and costs when levied was automatically

5

placed on probation with JCS, even when there is no jail sentence adjudicated.  This was routinely done with no investigation into the indigency of the individual or the reasons for their inability to pay the fine and costs. The probation orders supplied by JCS were routinely signed in blank by Judge Ward and then later filled in by JCS to require the individual to make payment to JCS of the fines, costs and additional monthly fees as required under Harpersville's contract with JCS.

26.     For a number of years, Harpersville has participated in implementing the JCS system.  That system and JCS's "Probation Tracker" software used at Harpersville is highly systemized and focuses on collections of fines and its fees -- not traditional probation services.  For instance, the "probation officer" does not visit the probationer's home, job or family, and has contact with them only at the JCS office in collecting fees and fines.

That collection focus allows the "offenders" to mail in payments if they live 30 miles from the JCS office.   *See* Exhibit 5. The training manual used by JCS instructs its employees on the use of its computer systems in tracking the payments made by the "offenders" and provides court forms to order probation and payments to JCS. The JCS training system also provided sample letters for use after probation was ordered, threatening the "offender" that "a warrant will be issued for your arrest" and that their "court date cannot and will not be reset." *See* Exhibits 6 and 7.  Similar JCS forms instruct the "offender" that they could avoid the court date if they paid an amount determined by JCS. *See* Exhibit 8.  Notice to the offender of these JCS set "court dates" was, with the City's knowledge, handled by JCS by regular mail with no proof of service and no consideration of returned mail showing no receipt. Similarly, the setting for any hearing on petitions instituted by JCS was done by JCS and listed on a separate "JCS Docket" which JCS

6

established and which Harpersville then adopted. Finally, the JCS manual instructs its employees on the issuance of warrants of arrest and provides forms for that purpose. *See* Exhibit 9.

27.     Once on probation to collect the fines, "offenders" who could not keep up their payments at Harpersville were arrested typically based upon FTA or FTOCO rather than probation violation. These codes stand for "Failure to Appear" and "Failure to Obey Court Order." Warrants were issued by the City based upon JCS's report that the offender failed to appear as directed at the JCS established date after notice from JCS. Similarly, FTOCO arrests resulted from JCS reporting that the "offender" failed to comply with their probation order – that is, they failed to pay or appear at the JCS offices as JCS directed. There is no ordinance or statute establishing Failure to Obey Court Order as an offense. The arrests and incarceration on these charges occurred without any determination of contempt or willfulness in these arrests and the additional costs were added without any finding whatsoever. Under this system, the "offender" arrested was jailed for an undetermined period of time with bond set by the city magistrate to approximate the money JCS claimed the person owed, which included fines, court costs, fees for time spent in jail, and JCS fees. Unlike legitimate probation systems where a probationer would be entitled to a finding of the reasons for revocation, appointed counsel and, at worse, suffer jail time equating to the original sentence, the system at Harpersville ignored all those safeguards focusing instead on the money it could demand.

28.     Harpersville, according to the 2010 census, has a population of 1,637 yet the City had over that number of persons on "probation" during the class period hereinafter discussed.

29.     The City Council and Mayor control the policy making for Harpersville and also hired the municipal court judge and contracted for services of JCS at the municipal court. The decision to use this JCS system was an administrative decision of Harpersville, by and through its mayor, and not a decision of the municipal court judge or the Chief Justice, or any other employee of the Administrative Office of Courts ('AOC').

30.     Harpersville, through its contract, pattern and practice, clothed JCS with the appearances of state authority and has previously even allowed JCS employees to carry badges.[3]  The JCS employees attended each municipal court session and were referred to as "probation officers" in the operation of the municipal court and city clerk's office, though none had such authority under Alabama statutes.  Under this system, "offenders" were not permitted to pay fines at the city clerk's office, but were instead required by Harpersville to make all payments, including those for fines, restitution, fees for being in jail, 'probation' fees and court costs, to JCS at the JCS office.

31.     This public ruse was maintained  by Harpersville for purposes of imposing and collecting fines and costs from citizens such as the Plaintiff, and was accomplished by allowing JCS to control the money, determine how much each municipal court "offender" must pay each month, how much would be credited for each payment to the collection "services" of JCS each month, and how much it would rebate to Harpersville toward the

---

[3]



fines adjudged.

32.     This system, as a matter of routine, violated the rights of persons such as the Plaintiff and the class she seeks to represent by imposing fines and charging fees to indigent persons with no hearing or consideration of their indigency and by converting fines to jail time for which they were also charged.

33.     As a policy and practice, the Harpersville court did not conduct *Bearden* hearings or inquire into the offender's ability to pay, or allow the offenders to fill out hardship forms requesting community service or other alternatives due to their client's poverty.[4]

34.     Despite the lack of authority to do so, Harpersville allowed JCS to use threats of revoking probation, arrest, increased fines and costs and jail time for purposes of collection.  Under the system operated by Harpersville,  JCS's determination to incarcerate an individual and/or impose unreasonable bond requirements was routinely accepted by City personnel as a matter of policy without conducting delinquency or probation hearings and without making any findings, much less any determination of indigency or appointment of counsel before taking such punitive action and despite the fact that both Harpersville and JCS have a significant financial stake in the proceedings.

35.     The collective actions of Harpersville and its agent JCS were inextricably interwoven with each other and routinely resulted in court costs and fines which exceed the statutory maximum of $500 for municipal courts. Similarly, the periods of "probation" imposed for purposes of collecting fines and fees for JCS routinely exceeded the two-year

---

[4] See DOJ Report pg. 53.

statutory maximum, all of which resulted in Harpersville taking action to detain and otherwise incarcerate individuals without any jurisdiction to do so. Additionally, Harpersville routinely approved adding to the "offender" probation balance any unpaid fines it could resurrect from old traffic tickets or fines, even though those that predated the "probation," thus violating prohibition against ex post facto punishments.

36.     After improperly imposing probation even when no jail sentence was involved, incarceration then followed if the fine, together with the fees added by JCS, were not paid as dictated. The collection purpose of this system was emphasized by the fact that probation was terminated once full payment was made.

37.     The City enforced a policy and practice of initiating and issuing warrants when a person missed a payment or failed to make sufficient payments.  That policy did not consider the person's ability to pay[5] – even when the City or its agent, JCS, had knowledge that the person was indigent and/or disabled – all without providing notice or validly summoning the person to court for a hearing.

38.     Instead, City policy was to issue and execute warrants,[6]  and for its police officers go to the homes of traffic debtors to arrest them. The City policy and practice were also therefore to deprive people of their liberty without any prior notice and opportunity to be heard and without any basic inquiry into whether the debt was owed, actually unpaid, or still valid.

39.     After incarcerating people for their ability to pay, Harpersville charged

---

[5] See DOJ Report pp.54-55

[6] See DOJ Report pg. 55

additional fees to those people for each day it kept them in jail as "jail fees."

40.     Under the Harpersville system, JCS had a monetary interest to conduct its role as "probation officer" in a way that maximized its personal profit and not as a neutral court officer.

41.     Under the scheme implemented by Harpersville, the town allowed its agent JCS to initiate probation revocation proceedings, to make recommendations to the city judge about that revocation, and to initiate charges of failure to appear or failure to obey court order – all while financially interested in the outcome of these strong-arm collection efforts.  Under the system at Harpersville, Judge Ward routinely signed "orders" in blank allowing JCS to fill in terms, amounts and requirements with many such "orders" never being filed with the court clerk and kept only in the computer records of JCS.

42.     Under the scheme implemented by Harpersville, neither Harpersville nor JCS undertook any determination of the reasons for nonpayment, and did not consider such things as the Plaintiffs' disability, unemployment, or assets in regard to the nonpayment of the fines and routinely sought collection from exempt income such as Social Security Disability payments.  As a result, juveniles and hundreds of persons on disability and social security were illegally also placed on "probation" with the required monthly costs.

43.     Under the scheme implemented by Harpersville, both Harpersville and JCS denied any responsibility to determine indigency, and provided no instruction to its employee's for the consideration of indigency.

44.     The City's policy and practice were to conduct no inquiry into the person's ability to pay, and the City's policy and practice also refused to use even the state-issued Affidavit of Substantial Hardship that is available for courts to use to determine indigence.

11

As such, the offenders had no opportunity to present evidence concerning their inability to pay or concerning any other relevant question.[7]

45.     Under the scheme implemented by Harpersville, after simple fines were converted to "probation" for payment, jail often resulted for the "offender" who did not meet the payment schedule. This Harpersville system used JCS's conclusion of a "probation violation" or "failure to obey court order" to incarcerate individuals who, had they been financially able to pay at the point of adjudication, would have paid only a fine with no probation whatsoever.

46.     The amount of the fine announced to debtors by the judge in open court often differed from the amount listed on the probation paperwork JCS created. The JCS papers usually showed an amount higher than the fine and court costs set by City ordinance.  In addition, Harpersville also charged people for each day it confined the person to jail.[8]

47.     Under its scheme, Harpersville, which was also financially interested, took advantage of its control over its police force and jail facilities to deny these "offender"/debtors the statutory and constitutional protections that every other Alabama debtor may invoke against a private creditor by allowing JCS to use or threaten debtors of the City with arrest and jail as coercion for payment.

48.     Under this scheme, it was the policy and practice of Harpersville to jail people when they could not afford to pay debts owed to the City resulting from prior traffic tickets or fines and to do so without any inquiry into the person's ability to pay and without

---

[7] See DOJ Report pg.58

[8] See DOJ Report pp. 59-61

considering alternatives to imprisonment.

49.    Harpersville arrested "offenders" and jailed them for an undetermined period of time. The cash bond was set by the city magistrate to approximate the money JCS claimed the person owed. Unlike legitimate probation systems where a probationer would be entitled to a finding of the reasons for revocation, appointed counsel and, at worse, suffer jail time equating to the original sentence, the system at Harpersville ignored all those safeguards.

## THE PLAINTIFF

50.    The Plaintiff and others similarly situated are individuals who were unable to fully pay fines levied by the Harpersville Municipal Court, and who, as a result, were assigned to JCS for "probation" under JCS for purposes of collecting the fine and were then required to pay additional fees for this "probation."   The Plaintiff Dana Carden was indigent yet, despite that indigency, was incarcerated for failure to pay fines, charges and fees for services allegedly rendered by JCS to Harpersville with which it contracted.

### DANA CARDEN

51.    Dana Carden ('Ms. Carden') is an individual resident of Sylacauga, Alabama, who was stopped by Harpersville Police Officer Scott Baggett for Speeding, Driving with No Insurance and Driving without a License in 2007.

52.    Officer Baggett issued her citations for the charges of Speeding, No Insurance, and Driving without a License but did not include a court date on the uniform traffic citation that he gave her.

53.    Officer Baggett told Ms. Carden to expect a letter from the city within 30-60

days notifying her of her court date in which she would be required to appear and answer for her charges.

54.     Ms. Carden never received notice of a court date nor did she receive a letter from the city or city court regarding the traffic citations.

55.     On Saturday, May 22, 2010, Ms. Carden was riding in a vehicle that was stopped by a road block in Sylacauga. Sylacauga Officers Mike Moore and Norman Dobbs ran her name and told her that she had three outstanding warrants for Failure to Appear ('FTA') by the City of Harpersville.

56.     Ms. Carden was arrested by Sylacauga officers Mike Moore and Norman Dobbs and she was taken to the Shelby County jail.

57.     A cash bond of $1,434, was demanded for Ms. Carden's release from jail despite the fact that she had been arrested on an improper FTA charge, she was not a flight risk, she was indigent, she was caring for her five-month-old premature baby, and that the underlying charges were traffic citations for which she had never had a judicial finding of guilt. She was not able to post the bond demanded.

58.     A public defender was listed on Ms. Carden's jail records. Ms. Carden never saw or talked to a lawyer and no one ever requested a lesser bond, a property bond, or a recognizance bond for her. Ms. Carden remained in the Shelby County jail - without seeing or talking to a lawyer - until Harpersville had court which was June 10, 2010 - nineteen (19) days.

59.     On June 10, 2010, Ms. Carden and approximately twenty (20) other people were brought from the Shelby County jail to the Harpersville municipal court. All of the inmates were dressed in their jail attire - orange jumpsuits - were shackled, wearing

14

handcuffs and were seated on the front row of seats in the room where court was held.

60.    The docket was called in alphabetical order and the inmates on the front row appeared as their name was called.

61.    Harpersville had hired Larry Ward as its part time municipal judge and he quickly processed each 'offender.'

62.    No inquiry was made about the economic status of any inmate despite the fact that they were all unable to post the cash bond demanded to secure their release.

63.    If a family member or employer of the inmate was present in court, they were called to explain why they could not pay to buy the offender's freedom.

64.    Ms. Carden approached the table when her name was called. She was wearing an orange jumpsuit, handcuffed and shackled as she stood before Judge Ward.

65.    Ms. Carden was not represented by counsel at this hearing despite the fact that a public defender was listed on her jail records.

66.    Ms. Carden was not employed and no family was able to attend court so she was the only one there to explain her financial plight.

67.    Ms. Carden told the City and the City's agent, JCS, that she did not have a job because she was caring for her premature baby. Further, she had spent 19 days in jail because she was unable to pay the $1,434 cash bond that was demanded.

68.    Despite the fact that the City court had no jurisdiction over offenses that occurred over two years ago, she pled guilty to the three charges from 2007 and she was ordered to JCS probation.

69.    She was not given 'credit' for the nineteen (19) days she spent in jail. Instead, Harpersville added daily jail charges to her bill for each day it confined her.

70.    She signed the papers that she was ordered to sign in exchange for her release from jail. These papers included a probation order which required her to make monthly payments of $145 to pay off fines and costs which now totaled $1,662.

71.    Additionally, she was required to pay JCS $45 each month she was on 'probation' and to pay JCS a $10 set up fee.

72.    She was ordered to pay $145 within thirty (30) days despite her continued statements that she was unable to pay - and would be unable to pay - this amount because she did not have a job and was caring for her premature son.

73.    The probation order listed "conditions" of probation containing unconstitutional restrictions on her liberty, which were imposed solely because of her wealth status. These restrictions included: 1) not changing residence or employment without notifying JCS, 2) avoiding "injurious or vicious habits," 3) working diligently at a lawful occupation, unless a full time student, 4) "truthfully answer all inquiries" by the JCS employees and "comply with all instructions" the JCS employee gives. In addition to these unlawful constraints, the order states in bold type -  **"You are subject to arrest for violation of any condition imposed by this order, and your probation may be revoked accordingly."**

74.    Ms. Carden was forced to sign these papers in exchange for her freedom.

75.    Once on 'probation' with JCS, Ms. Carden was charged $967 for her speeding ticket, $628 for Driving with no License, and $578 for No Insurance - all of these amounts exceed the fine amounts as set by ordinance.

76.    These up-charges were a result of the City of Harpersville adding additional,

16

daily jail fees for the days it confined her in the Shelby County jail.

77.     Ms. Carden's friend paid $50 to JCS on June 16, 2010. JCS took $20 of the $50 payment for itself (allocating $10 to the setup fee and $10 to her 'probation' fees) and credited $30 to her fine balance.

78.     Despite its knowledge that Ms. Carden was unemployed as of June 16, 2010, JCS demanded that Ms. Carden pay $2,143 to the City of Harpersville and $1,070 to JCS.

79.     Ms. Carden was and has been indigent and was not able to pay for her insurance - much less the fines and fees for JCS, but, in accordance with the policy and practice of Harpersville which was established in its contract with JCS, neither the Harpersville Municipal Court nor JCS ever made any inquiry into her inability to pay.

80.     When Ms. Carden was unable to the pay amounts JCS demanded, Harpersville issued another warrant for her arrest.

81.     Throughout this period of time, JCS provided no services to Ms. Carden and acted merely as a collection agency charging additional fees and, despite knowledge that Ms. Carden was unable to pay these fines and indigent, Harpersville's agent, JCS, sought to charge and collect these unlawful fees without any due process.

82.     On March 3, 2010, several people sued the City of Harpersville in Shelby County Circuit Court (CV-2010-900183).  As a result of this lawsuit, Harpersville became the subject of an ongoing investigation and serious questions were raised regarding the integrity of that town, its municipal court and its policies and procedures.

83.     In their initial lawsuit, the plaintiffs requested that the court certify a class action and sought declaratory and injunctive relief.

84.     On July 17, 2012, the plaintiffs in CV-2010-900183 filed their amended

17

complaint requesting damages as well as injunctive relief on behalf of a putative class.

85.    The court has not certified a class in CV-2010-900183 and that case has not been closed.

86.    On August 8, 2012, the City Council of Harpersville voted to dissolve the Harpersville Municipal Court and the pending cases were then transferred to the Shelby County District Court for further action.

87.    On December 27, 2012, Assistant District Attorney Alan Miller filed a motion in the District Court of Shelby County requesting that the Court 'remit all outstanding fees, fines and costs and to establish this account as "Paid in Full"' for all the active traffic cases from Harpersville. (Exhibit 4). That same day, Judge Ronald Jackson, Presiding District Judge of Shelby County, ordered that all traffic cases listed in the motion were declared PAID IN FULL and ordered that any warrant associated with the case was recalled, set aside and held for naught.

88.    While the District Court ordered that all the traffic cases listed in the motion be declared PAID IN FULL, Ms. Carden, nor any of the class she seeks to represent, have ever received compensation for damages they sustained as a result of Harpersville's illegal policies and practices.

89.    Ms. Carden never received notification from the City of Harpersville or JCS that her probation was terminated, that her fine balance was declared paid in full, or that the warrant for her arrest had been recalled.

90.    After hearing the Harpersville tickets had been cleared, Ms. Carden called the clerk's office and was told that there were some cancellations, but she was never able to verify if there was an outstanding warrant for her arrest.

91.     Ms. Carden never received remuneration for her false arrest, false imprisonment, or any other violations of her constitutional rights.

**PLAINTIFF'S CLASS ALLEGATIONS**

92.     The Classes which the named Plaintiff seeks to represent consist of:

> All individuals who were assigned by the Harpersville Municipal Court to "probation" with JCS for the collection of fines.

> AND

> All individuals who, despite their indigency, were incarcerated without consideration of their indigency for failure to pay fines, charges and fees from the Harpersville Municipal Court.

93.     The members of the Classes and subclasses are so numerous that joinder of all members is impracticable.

94.     As of this time, the exact number in the Classes is unknown but would be more than one thousand and the class is ascertainable.

95.     Plaintiff's treatment by the Defendant is typical of the members of the Classes and subclasses.

96.     Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel who are competent and experienced in class litigation.  Plaintiff has no interests that are adverse or antagonistic to the Classes.

97.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by many Class members may be small, the expense and burden of individual litigation make it virtually impossible for the Class members individually to seek redress for the wrongful conduct alleged.

98.     Common questions of law and fact exist as to all members of the Class, and predominate over any questions affecting solely members of the Class. Among the questions of law and fact common to the Class are:

a.      Whether policy and practice of automatically placing on "probation" at additional cost all municipal offenders who cannot immediately pay fines and costs is legal;

b.      Whether the policy and practice of converting unpaid fines and costs to days of incarceration, without any determination concerning an individual's ability to pay, is legal;

c.      Whether the policy and practice of requiring every order of the municipal court to require probation fees for JCS is legal;

d.      Whether the policy and practice of incarcerating individuals for failure to pay fines and costs with no finding of willfulness is legal;

e.      Whether the policy and practice of incarcerating individuals for failure to appear when no notice of the hearing provided by the court is legal;

f.      Whether the policy and practice of incarcerating individuals for Failure to Obey Court Order when no such ordinance exists and with no finding of willful contempt is legal;

g.      Whether the policy and practice of failing to appoint counsel for indigent defendants when a jail sentence is involved is legal;

h.      Whether the policy and practice of failing to make any inquiry into indigency before imposing fines and costs is legal;

i.      Whether the policy and practice of failing to give adequate notice of

the charge and nature of a probation revocation hearing, failing to provide a probation revocation hearing, failing to make written findings concerning the reasons for revoking probation and the evidence relied upon, failing to hold a hearing to determine indigency before revoking probation and otherwise imposing incarceration, failing to make written findings concerning an individual's willful nonpayment of fines and costs before imposing incarceration for nonpayment, is legal;

j.      Whether the policy and practice of charging incarcerated municipal defendants a daily jail fee for each day the person is incarcerated is legal;

k.      Whether the policy and practice of imposing fines and court costs that exceed that statutory maximum for municipal is legal;

l.      Whether the policy and practice of extending "probation" for municipal offenses beyond 24 months is legal;

m.      Whether the policy and practice which fails to give any credit for time spent incarcerated is legal;

n.      Whether the policy and practice of adding unpaid fines that predate probation to the balance to be paid during probation is legal;

o.      Whether a municipality can legally enter into an exclusive no bid contract to bind its municipal court to use a private for profit probation company and require fees over and above costs and fines to be paid by those appearing at the court.

99.      Harpersville has acted on grounds generally applicable to the Class, thereby making appropriate final relief with respect to the Class as a whole.

100.    Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a Class Action. The data concerning the Class members and the transaction details and amounts on each charge is largely computerized by Harpersville and by its agent JCS.

101.    The names and addresses of the Class members are a matter of public record and are also kept by JCS and notice can be provided to the Class members via First Class U.S. Mail or other appropriate means as may be directed by the Court.

## COUNT ONE
## DENIAL OF DUE PROCESS

Plaintiff incorporates by reference the previous paragraphs and makes them a part hereof.

102.    The Plaintiff avers that Harpersville, acting under color of state law in violation of 42 U.S.C. § 1983, has denied her and the Class members their rights to due process.

103.    By contract, Harpersville delegated many administrative and judicial functions of its municipal court to its agent JCS, clothing it with the color of state law for the collection of court fines, costs and private fees.

104.    The contract between JCS and the Town of Harpersville grants an exclusive franchise for provision of private "probation" services at Harpersville, but was not competitively bid, as required by Ala. Const. Art. I, § 22 and Ala. Code 1975, §41-16-50.

105.    That no bid contract gave JCS an exclusive contract and was signed by the City mayor and bound Harpersville in specific municipal court areas requiring that its municipal "***court agrees that each court order shall provide*** for the following:

a probation fee of $35.00 per month flat fee

22

One time probationer set up fee of $10.00. . . . " (**emphasis added**).

106.    Harpersville, through its mayor and/or council, approved the agreements with JCS and signed the contract on March 3, 2005.

107.    Harpersville, through its mayor and council, also approved the employment of Larry Ward as a part time judge of its municipal court.

108.    Municipalities are prohibited from laws, ordinances and policies which are in conflict with state law.  *See Ala Code* Section 11-45-1.  *Also see, Ala. Const.* Article 4 Section 89.

109.    State law also dictates a separation of the branches of government.  *Ala Const.* Article 3, Section 43.[9]  Under that doctrine, legislative powers granted to cities and towns are exercised by the city council, *Ala. Code,* Section 11-43-43, while the mayor of the city is responsible for executive duties.  *Ala. Code,* Section 11-43-83.  If the town establishes a municipal court, its administration is supervised by the Chief Justice of Alabama.  *Ala. Code,* Section 12-2-7 *et. seq.*; *Ala Const.,* Article 6, Section 139.

110.    Municipal mayors have the executive power to execute and enforce contracts[10] and the city councils have the legislative power to enact regulations and

---

[9]Ala. Const. Art. III, Section 43 states:
In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men.

[10]Ala. Code Section 11-43-83 - The mayor shall see that all contracts with the town or city are faithfully kept or performed. He shall execute all deeds and contracts and bonds required in judicial proceedings for and on behalf or performed. He shall execute all deeds and contracts and bonds required in judicial proceedings for and on behalf of the city or town and no sureties shall be required on such bond. He shall perform such other executive duties, in addition to those prescribed in this article, as may be required of him by the council.

ordinances,[11] but neither the mayor nor the council has the power to invade the administration of its judiciary.

111.    Harpersville has exceeded its statutory authority and acted in conflict with state statute and constitutional limitations when, acting through its mayor, it agreed with JCS to bind its municipal court to include probation and fees for JCS in every court order entered by its hired judge.  Those fees are not part of any fine schedule or allowed court costs and that action essentially sold the court process for purposes of increasing income to the City and its agent JCS.

112.    The illegal agreement and policy of Harpersville invaded the judicial authority and court administration reserved to the municipal judge and the Chief Justice.  Further, even the municipal court lacks jurisdiction to add monthly fees not part of any schedule of fine established by ordinance, and not part of the costs allowed by statutes.

113.    Probation is only appropriate when an individual has been sentenced to jail time and not when only a fine has been assessed as is the case with the Plaintiff and Class members.  As a result, the Harpersville policy and contract to include probation in every court order mandated a judicial practice that continually deprived indigent misdemeanants of their constitutional rights.

114.    The policy and practice of Harpersville also violated the Alabama Constitution.  Article I, Section 20 *Ala. Const.* specifically prohibits imprisonment for the payment of debts, yet the policy enforced at Harpersville regularly jailed misdemeanants

---

[11]Ala. Code Section 11-43-43 - All legislative powers and other powers granted to cities and towns shall be exercised by the council, except those powers conferred on some officers by law or ordinance. The council shall perform the duties required by this title and other applicable provisions of law.

upon the recommendation of its agent JCS for failure to pay fines, fees and costs.  Article I, Section 16 *Ala. Const.* requires that all persons shall before conviction be bailable by sufficient surety, but despite this prohibition, misdemeanants were regularly jailed without lawful conviction under any contempt proceedings or probation violation with bail set at the amounts claimed to be owed.

115.    The Plaintiff and some Class members were imprisoned, and some repeatedly, under these policies of Harpersville for their failure to pay fines, costs and the added fees mandated by the illegal contract between Harpersville and JCS. The Plaintiff was not given a hearing or consideration of her indigency before being jailed, nor was she provided notice of charges, a hearing on charges levied that might result in imprisonment, or provided assistance of counsel before being imprisoned.

116.    At the Harpersville Municipal Court, a person unable to fully pay fines and costs when levied was automatically placed on probation.  The Harpersville system used the JCS orders and forms even when there is no jail sentence adjudicated.  This was routinely done with no investigation into the indigency of the individual or the reasons for their inability to pay the fines and costs.  The orders supplied by JCS under the agreement with Harpersville then required the individual to make payments to JCS, rather than the City clerk, of the fines, costs and additional monthly fees.

117.    Harpersville, through its city clerks, actively enforced these requirements as part of the policy and procedures established under this contract and refused to accept payments of fines and costs at the city clerk's office and instead directed those persons to make all payments, including those for fines, restitution, probation fees and court costs, to JCS at the JCS office at hours and locations set by JCS.

25

118.    Harpersville, through its contract, practice and policy, clothed its agent JCS with the appearance of state authority and has previously allowed JCS employees to carry badges.  Under these practices and policies, JCS employees were allowed to attend each municipal court session and were referred to "probation officers" in the operation of the municipal court and city clerk's office, though none had such authority under Alabama statutes.

119.    Harpersville's policy and practice also allowed JCS to control the money collected from persons such as the Plaintiff and the class members and to determine how much each such municipal court "offender" must pay each month.

120.    Harpersville's policy and practice also allowed JCS to determine how much of the collected sums will be credited to the collection "services" of JCS each month and how much it would rebate to Harpersville toward the municipal court fines adjudged.

121.    This system, as a matter of routine, violated the rights of persons such as the Plaintiff and the classes she seeks to represent by imposing fines and charging fees to indigent persons with no hearing or consideration of their indigency.

122.    Despite the lack of authority to do so, Harpersville's practice and policy permitted and approved JCS, at its discretion, to use threats of revoking probation, increasing fines and costs, arrest and jail time for purposes of collection.

123.    Under this system, should an individual fail to pay to the satisfaction of JCS, Harpersville permitted and approved JCS setting payments and reporting schedules and determining when the individual's "probation" should be revoked, or when to impose additional fines and costs.

124.    Under the system operated at Harpersville, JCS's determination to

26

incarcerate an individual and/or impose unreasonable release requirements was routinely accepted by city personnel without conducting delinquency or probation hearings and without making any findings, much less any determination of indigency or appointment of counsel before taking such punitive action.

125.   Harpersville permitted JCS to control and dictate these functions and, as a consequence, this routinely resulted in court costs and fines which exceed the statutory maximum of $500 for municipal courts and additional Harpersville imposed additional "jail fees" determined by the city clerk for the costs of any incarceration.  Similarly, the periods of "probation" imposed for purposes of collecting fines and fees at Harpersville routinely exceeded the two-year statutory maximum, all of which resulted in action to detain and otherwise incarcerate individuals without any jurisdiction to do so.

126.   The part time municipal court judge employed by Harpersville did no investigation of indigency as a matter of policy and has testified that he thought that was the duty of JCS which also did not investigation of indigency.

127.   Under the system at Harpersville, after simple fines were illegally converted to "probation" for payment, jail often resulted for the "offender" who did not meet the payment schedule set by JCS and enforced by Harpersville.  This system used and accepted JCS's conclusion of a "probation violation" or "failure to obey court order" and employed JCS recommendations for the issuance of a warrant of arrest to incarcerate individuals whose original obligation was only the payment of a fine.

128.   Under this system at Harpersville, the Plaintiff and Class members were first fined, but then automatically placed on "probation" regardless of whether a jail sentence was included.  Though the Plaintiff was indigent, Harpersville made no investigation of that

matter.  When the Plaintiff was unable to pay the fines, costs and additional JCS fees that Harpersville agreed to levy, recommendations from JCS were made and followed by Harpersville to incarcerate her for undetermined times unless cash bonds were made in amounts closely approximating the sums sought by JCS's collection efforts.

129.    Many individuals who could not pay their fines and added fees, such as the Plaintiff and Class members, were jailed for charges against them for "failure to obey court order," though there is no such state statute or city ordinance which defines this as a criminal act.

130.    Though a determination of willful refusal to obey a court order as required by *Ala. Code* §15-18-62 can lawfully lead to incarceration, no such determinations were made under the system at Harpersville.

131.    Harpersville adopted and implemented JCS's conclusion of a "probation violation" or "failure to obey court order" and issued arrest warrants to incarcerate individuals whose original case had only been a fine.

132.    In this process of converting fines to jail time, Harpersville did not give adequate notice to the "offender" of the nature of any lawful charge, it failed to conduct hearings, failed to make written findings concerning the reasons for any probation revocation or the evidence relied upon, and failed to make written findings concerning any willful nonpayment of fines and costs before imposing incarceration for failure to pay fines and costs.

133.    Under this policy and practice at Harpersville, when a simple fine was transformed into a jail sentence of an undetermined time, the City failed to provide counsel for the "offenders."

134.   After jailing an "offender," Harpersville acted to further violate the Plaintiff's constitutional rights by arbitrarily granting early release to some individuals while denying it to others under similar circumstances without any rational basis other than payments it had secured.  As a result, there was no consistent standard of review or logical system under which those incarcerated were granted release.

135.   Under the practice and policies used at Harpersville, after an adjudication under which a fine was levied, additional fees, costs, and other charges were added to the "offender" bill for each new arrest, alleged probation violation, or contempt proceeding including, in some cases, those relating to fines adjudicated years earlier.

136.   As a proximate consequence of this deprivation of due process, the Plaintiff and Class members suffered injuries, including having fines converted to jail sentences, being unlawfully incarcerated for undetermined periods of time with the loss of their liberty and injury to their dignity, by having fines in excess of statutory limits levied against them and by having other illegal charges for JCS fees, costs and restitution levied, all while being indigent.

## COUNT TWO
## VIOLATION OF THE FOURTH AMENDMENT

Plaintiff incorporates by reference the previous paragraphs and makes them a part hereof.

137.   The Plaintiff avers that Harpersville, acting under color of state law in violation of 42 U.S.C. § 1983, violated her Fourth Amendment rights and the rights of the Class members to be free from unreasonable seizure.

138.   By contract as discussed in detail above, Harpersville illegally delegated

29

many administrative and judicial functions of its municipal court to its agent JCS, clothing it with the color of state law for the collection of court fines, costs and private fees.

139.   In addition to a denial of due process guaranteed the Plaintiff under the Fourteenth Amendment, the arrest and detainment of these "offenders" who cannot pay the fine imposed under this system constituted a "seizure" in violation of the Fourth Amendment as well.

140.   Under Alabama law, a simple fine can only be converted into jail time if the court makes findings under *Ala. Code,* Section 15-18-62 (1975) that a defendant has willfully failed to pay the fines.

141.   Harpersville's policy and practice of including probation with JCS in every municipal court order created the process by which misdemeanants were incarcerated without a willfulness hearing as required by *Ala. Code,* Section 15-18-62 and in violation of Alabama case law, the Alabama Constitution and the U.S. Constitution.

142.   Under Alabama case law, the Alabama Constitution and the U.S. Constitution, an indigent defendant cannot be required to serve jail time for nonpayment of fines or costs.[12]

---

[12]It is clear as a matter of constitutional law that an indigent defendant cannot be required to serve jail time for nonpayment of fine and costs. *Tate v. Short*, 401 U.S. 395 (1971); *Lingle v. State*, 51 Ala.App. 210, 283 So.2d 660 (1973); Smith v. State 51 Ala.App. 212, 283 So.2d 662 (1973). "To imprison an indigent when in the same circumstances an individual of financial means would remain free constitutes a denial of equal protection of the laws." *Barnett v. Hopper*, 548 F.2d 550, 554 (5th Cir.1977). This is not a case of a defendant who, though capable of paying a fine, refuses or neglects to do so.

Although Section 15-22-52, *Alabama Code* 1975, states that payment of fine and costs may be made a condition of suspension of sentence or probation, in *State v. Esdale*, 253 Ala. 550, 45 So.2d 865 (1950), our Supreme Court indicated that such a condition was contrary to our constitution.
"These benefits (probation and suspension of sentence) are not the subject of bargain and sale to be conditioned on the payment of costs and fees assessed as an incident to the prosecution and trial and to condition these benefits on the payment of such costs and fees violate the letter and spirit of Section 13 of the Constitution of 1901 which provides

143.    Despite longstanding legal precedent prohibiting incarceration for one's inability to pay a fine/debt, Harpersville's personnel, working in conjunction with JCS, unlawfully arrested and jailed Plaintiff class members for their inability to pay a simple fine with added fees and costs dictated by the Harpersville contract with JCS.

144.    Harpersville's police, municipal court processes and jail access all became tools of collection under forms and processes issued by its agent JCS and which were routinely followed by Harpersville.  Harpersville's policy and practice, after clothing its agent JCS with the appearance of state actor acting on their behalf, allowed JCS to threaten arrest or revocation of probation and/or incarceration in order to coerce these indigents to pay the city fines and fees for misdemeanor offenses not otherwise subject to jail time under the original adjudication.

145.    When these threats failed to produce sufficiently, Harpersville police, clerks and other personnel cooperated with JCS to arrest and jail the Plaintiff and class members.

146.    The jailing of the Plaintiff and class members by Harpersville, as described and under the specific facts stated above, constitute unlawful seizures in violation of the Fourth Amendment.[13]

147.    As a proximate consequence of this unlawful seizure, the Plaintiff and Class members suffered injuries, including having fines converted to jail sentences, being unlawfully incarcerated for undetermined periods of time with the loss of their liberty and

---

that 'justice shall be administered without sale, denial or delay.'" *Esdale*, 253 Ala. at 553. *Crutcher v. State,* 439 So. 2d 725; 726 (Ala. Crim. App. 1983)

[13] "Fourth Amendment seizure [occurs] . . . when there is a governmental termination of freedom of movement through means intentionally applied." (internal quotation marks and emphasis omitted)); *Oliver*, 510 U.S. at 274 (plurality opinion) ("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it.").

injury to their dignity, all while being indigent.

## COUNT THREE
## VIOLATION OF THE SIXTH AMENDMENT

Plaintiff incorporates by reference the previous paragraphs and makes them a part hereof.

148.    The Plaintiff avers that Harpersville, acting under color of state law in violation of 42 U.S.C. § 1983, violated her Sixth Amendment rights and the rights of the Class members.

149.    By a no bid contract as discussed in detail above, Harpersville illegally delegated many administrative and judicial functions of their municipal court to its agent JCS, clothing it with the color of state law for the collection of court fines, costs and private fees.

150.    Under the policy and practice at Harpersville, when a simple fine was transformed into a jail sentence of an undetermined time, counsel was not provided for the indigent "offenders."

151.    The Plaintiff was initially ordered to pay only a fine at the Harpersville Municipal Court, but due to her inability to pay, she was placed on "probation" under JCS pursuant to JCS form orders and the contract approved by Harpersville.

152.    The contract signed by Harpersville approved a "probation" process as essentially a collection vehicle for the City to collect its fines. That agreement, as discussed above, conflicts with state statutes, violates state constitutional requirements for separation of power in the branches of government, and exceeds the authority of the mayor and council.

153.   Under that agreement, Harpersville allowed JCS to add monthly fees to the "offender" who had already disclosed an inability to pay the fine when adjudicated and even though JCS provided no services to them.

154.   Under the agreement and with the knowledge and approval of Harpersville, JCS represented itself as acting on behalf of the City which clothes it with that appearance.

155.   Under this agreement, Harpersville has unlawfully invaded the province of the municipal court and mandated that each order there contain provisions for fees to JCS.

156.   By this agreement, simple fines without jail sentences were automatically and illegally converted to probation under the JCS with which it contracts if the offender cannot promptly pay the entire fine and costs.

157.   After this conversion from a fine to 'probation,' threats of jail were used by JCS with the approval of Harpersville and actual incarceration then took place by police and other city personnel if the fines, fees and costs were not paid as scheduled.

158.   The jeopardy of jail time was not present when the simple fines were adjudicated against the Plaintiff and Class members and would not have been present but for Harpersville's policy and practice adopting and using the JCS collection system in the administration of its court system illegally requiring "probation" for simple fines.

159.   With the Plaintiff's inability to pay and the JCS focus on collections, charges were routinely initiated claiming "probation violation" or "failure to appear" or "failure to obey court order."   These were initiated by JCS under its system and then approved by Harpersville personnel.

160.   At that point, jail sentences become potential jeopardy for the "offenders" such as the Plaintiff on charges that had never before been subjected to meaningful

adversarial testing.  Nevertheless, neither JCS nor Harpersville routinely provided counsel for those "offenders."

161.    At the point when jail sentences become potential, Harpersville did not provide notice of charges, nor were findings made as required for conviction.  Similarly, though JCS also regularly proposed a charge of "failure to obey court order" which Harpersville then pursued, that is not a valid offense.  If willful failure to pay under state statutes such as *Ala. Code* Section 15-18-62 is used as the basis, under the City's system with JCS, there was no finding or hearing on the issue of willfulness.

162.    The Plaintiff, while indigent, was unlawfully jailed by Harpersville under this JCS system and was not provided any meaningful assistance of counsel in the process leading to her incarceration or freeing her from incarceration.

163.    Harpersville knowingly denied the Plaintiff assistance of counsel despite the fact that she was obviously indigent as she spent nineteen (19) days in jail because she could not pay the $1,434 cash demanded for her release.

164.    These actions constitute a denial of the Plaintiff's rights secured by the Sixth Amendment.

165.    As a proximate consequence of this violation of her Sixth Amendment rights, the Plaintiff and Class members suffered injuries, including having fines converted to jail sentences, being unlawfully incarcerated for undetermined periods of time with the loss of their liberty and injury to their dignity, by having fines in excess of statutory limits levied against them and by having other illegal charges for JCS fees, costs and restitution levied, all while being indigent.

34

**COUNT FOUR**
**VIOLATION OF THE EIGHTH AMENDMENT**

Plaintiff incorporates by reference the previous paragraphs and makes them a part hereof.

166.   The Plaintiff avers that Harpersville, acting under color of state law in violation of 42 U.S.C. § 1983, violated the Eighth Amendment prohibitions against excessive fines, cruel and unusual punishment and excessive bail, in its actions with the Plaintiff and Class members.

167.   As discussed in detail above, Harpersville illegally delegated many administrative and judicial functions of their municipal court to its agent JCS, clothing it with the color of state law for the collection of court fines, costs and private fees.

168.   The Eighth Amendment prohibits cruel and unusual punishment and, as such, limits the kinds of punishment that can be imposed on those convicted of crimes, proscribes punishment grossly disproportionate to the severity of the crime and imposes substantive limits on what can be made criminal and punished as such.

169.   Under Alabama law, a municipal court has no authority to award a fine on any particular charge over $500, *Ala. Code §* 13A-5-12(a)(3), and even lawful probation for misdemeanors cannot, by statute, extend beyond a two-year period. *See Ala. Code §* 15-22-54(a).

170.   As mentioned above, *Ala. Code* § 15-18-62 is the only statutory method under which a fine levied by a court on adjudication can be converted to imprisonment, but that can legally occur **only** where the court finds willful nonpayment of the fine and cost.

171.   Even upon proper notice and a finding of willful nonpayment under § 15-18-

35

62, the conversion of fine to imprisonment has a specific ratio such that a fine not to exceed $500 shall result in no more than 20 days.  *See  Ala. Code* § 15-18-62(2).

172.    Rule 26.11 of the Alabama Rules of Criminal Procedure provides the method for dealing with fines, restitution and the failure to pay under a variety of circumstances, none of which were followed by Harpersville.

173.    Under these facts, Harpersville  illegally contracted with JCS to add monthly fees and costs to each municipal court order.  This agreement increased the substantial fines levied against indigent persons such as Ms. Carden.

174.    Neither Harpersville nor its agent JCS, made inquiry into the indigency of the "offenders" in the system.  As a result, Ms. Carden's failure to make payments as dictated would result in threats of arrests.  If threats failed to produce the demanded payments, arrest and incarceration followed under a process based upon JCS's recommendation that the offender had "failed to obey a court order" or had "failed to appear" or had violated "probation."

175.    These fines exceeded the statutory limits of the municipal court and the incarceration periods imposed for the failure to pay exceeded those in *Ala. Code* §15-18-62.

176.    Once in jail, Harpersville failed to give credit to Ms. Carden for the time she served as required under statute at the rate of $15 per day against the fine and, instead, charged Ms. Carden a jail fee which was added to her balance.

177.    The practice and policy of imposing jail time for an inability to pay its fees, fines and costs violates the Eighth Amendment prohibition against excessive fines and cruel and unusual punishment.

178.    The practice and policy of charging for jail time when a person has neither the ability nor opportunity to obtain release violates the Eighth Amendment prohibition against excessive fines and cruel and unusual punishment.

179.    Ms. Carden was at all pertinent times indigent and was incarcerated by City personnel for her inability to pay fines, fees and costs.

180.    The City charged Ms. Carden for each day it kept her in jail despite her inability to pay the cash bond which totaled all the fines, fees, and costs demanded.

181.    After a person such as Ms. Carden is arrested, the City calculates the amount for her bail based upon the amount claimed for fines, costs, and jail fees and required that sum for release.  The city did not consider factors justifying release on recognizance or other  factors under *Ala Rule Crim Pro* Rule 7.2.  This practice resulted in excessive bail in violation of the Eighth Amendment.

182.    As a result of the violations of the Eighth Amendment, Ms. Carden and the class members were subjected to excessive fines, fees, and costs beyond the jurisdictional limits of the municipality and in violation of the prohibition against excessive fines and cruel and unusual punishment.

183.    As a proximate consequence of this violation of her Eighth Amendment rights, Ms. Carden and the class members suffered injuries, including having fines converted to jail sentences, being unlawfully incarcerated for undetermined periods of time with the loss of her liberty and injury to their dignity, by having fines in excess of statutory limits levied against her and by having other illegal charges for JCS fees, costs and restitution levied, jail time and excessive bail demanded, all while being indigent.

**COUNT FIVE**
**DENIAL OF EQUAL PROTECTION**

Plaintiff incorporates by reference the previous paragraphs and makes them a part hereof.

184.    Harpersville has acted under color of state law in violation of 42 U.S.C. § 1983 to deny the Plaintiff and Class members' rights to equal protection secured by the Fourteenth Amendment.

185.    This is accomplished by the illegal contractual agreement Harpersville had with JCS. Under that agreement, the actions of its agent JCS were inextricably intertwined in a practice and policy at Harpersville. That practice and policy automatically required "probation" for any person who, despite having no jail sentence, was financially unable to fully pay the fine and costs when levied by the municipal court.  That probation requirement was part of the agreement between Harpersville and JCS and was part of every printed order at the municipal court and required payment of monthly fees to JCS.

186.    Persons who were financially able to fully pay the levied fine and costs at Harpersville were not placed on "probation."  As a result, those persons were not charged any fees for JCS and were not subjected to threats of arrest and incarceration in the collection process.

187.    For those such as the Plaintiff and class members who were unable to fully pay the fine and costs when levied by the municipal court, not only were they required to come to court for traffic tickets, were charged court costs, they were also put on "probation" with JCS.

188.    This requirement was part of the Harpersville contract with JCS.   That

contract, as mentioned above, exceeds the statutory and constitutional authority of municipalities and imposed on the municipal court an agreement in violation of the separation of powers doctrine between the branches of government.

189.   Once on "probation" for purposes of paying fines and costs, this policy and practice at Harpersville routinely imposed incarceration and additional costs on individuals who were unable to pay fines and costs, without any determination of willfulness as would lawfully be required under Alabama statutes.  See *Ala Code* Section 15-18-62.

190.   This disparate treatment based upon the wealth of the "offender" before the municipal court is a violation of equal protection and cannot be justified on any legitimate rational state interest basis.

191.   This inequality of treatment is also beyond the authority of the municipal court which is required by Alabama statute to uniformly process traffic infractions and penalties for misdemeanors in accordance with specified maximum fines.  *See Ala. Code* Section 12-14-8.  The policy at Harpersville was not uniform with the procedures established by the Alabama Administrative Office of Courts because it added fees only to "offenders" who could not pay immediately and created its own "rules" for penalizing individuals who could not pay as directed.

192.   These additional JCS fines resulted in disparate treatment between those who could immediately pay the fine from those who were unable to immediately pay the fine. Furthermore, those "offenders" at Harpersville with its JCS arrangement were processed and fined differently than "offenders" in jurisdictions that have not allowed JCS to charge additional fees to those who cannot pay. There is no state authority for such disparate treatment.

193.    The Plaintiff and class members were required to pay the additional costs and fees under this disparate system and many were unlawfully jailed for their inability to pay as demanded.

194.    As a proximate consequence of this denial of the right to equal protection under the Fourteenth Amendment, the Plaintiff and Class members suffered injuries, including having fines converted to jail sentences, being unlawfully incarcerated for undetermined periods of time with the loss of their liberty and injury to their dignity, by having fines in excess of statutory limits levied against them and by having other illegal charges for JCS fees, costs and restitution levied, and jail fees demanded for the time the city kept them in jail -- all while being indigent.

## COUNT SIX
## DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff incorporates by reference the previous paragraphs and makes them a part hereof.

195.    A real controversy exists between these parties concerning several issues, including the validity of Harpersville's attempt to bind its municipal court and the legality of the actions taken under the contract with JCS, such that declaratory relief is appropriate.

196.    Plaintiff requests the Court to declare that Harpersville had no authority to contractually bind its municipal court and that the contract is void *ab initio*.

### City does not have the power to bind the Court

197.    Harpersville entered into an agreement with JCS that exceeded both its statutory and constitutional limitations on municipalities.  Furthermore, that agreement violated the separation of powers doctrine embodied in the Alabama Constitution.  See *Ala.*

40

*Const.,* Article 3, Section 43.   As a result, that agreement is void and due to be declared a nullity.

198.    Alabama state law also dictates a separation of the branches of government. *Ala. Const.,* Article 3, Section 43.   Under that doctrine, legislative powers granted to cities and towns are exercised by the city council, *Ala. Code* Section 11-43-43, while the mayor of the city is responsible for executive duties.   *Ala. Code,* Section 11-43-83.  If the town establishes a municipal court, its administration is supervised by the Chief Justice of Alabama.  *Ala. Code* Section 12-2-7 *et. seq.*; *Ala. Const.,* Art. 6, Section 139.

199.    A city's mayor, such as Harpersville's mayor, has the executive power to execute and enforce contracts and the city council has the legislative power to enact regulations and ordinances, but neither the mayor nor the council has the power to invade the administration of its judiciary.

200.    Harpersville exceeded its statutory authority and acted in conflict with state statute and constitutional limitations when, acting through its mayor, it agreed to require its municipal court to include probation and fees for JCS in every court order entered by its hired judge.  That action essentially sold the court process for purposes of increasing income to the City.

**Contract violates statutory limitation regarding traffic citations and municipal fines**

201.    That agreement also violated the uniformity required by statute for processing traffic infractions and penalties for misdemeanors in accordance with specified maximum fines.  *See Ala. Code* Section 12-14-8.

202.    The process at Harpersville was not uniform with the procedures established

by the Alabama Administrative Office of Courts because it added fees only to "offenders" who could not pay immediately and created other "rules" for further penalizing individuals who could not pay as directed.  "Offenders" who were able to immediately pay the fine were charged one rate, but those who were unable to immediately pay for the same offense were charged the fine and required to pay JCS monthly fees that accumulate each month that passed.

203.   The "offenders" at Harpersville were processed and fined differently than "offenders" in municipal jurisdictions which did not contract with JCS to charge its fees to those who cannot pay and, as a result, violates uniformity requirements of *Ala. Code* Section 12-14-8.

**Contract overrides judicial authority and administration of municipal courts reserved to the Chief Justice**

204.   The illegal agreement and policy of Harpersville invaded and overrode the judicial authority and court administration reserved to the municipal judge and the Chief Justice.

**Contract is an exclusive franchise**

205.   The contract between JCS and the City of Harpersville granted JCS an exclusive franchise for the collection of city fines and court costs. According to their contract the collection activities were described as "probation" and JCS was the City's sole provider of these services up and until the City council terminated its contract on August 8, 2012.

206.   The contract was not competitively bid as required by Ala. Const. Art. I, § 22 and Ala. Code 1975, §41-16-50.

42

207.   Because the contract was not bid, it is void.

208.   The Plaintiff also requests the Court to declare the actions of Harpersville under this contract to be void *ab initio* under the premises discussed above.  Under this void agreement, Harpersville implemented policies and practices to prosecute persons such as the Plaintiff where there is no jurisdiction or authority to do so under Alabama law, doing so intentionally in an effort to coerce payment of fines and costs from indigent people.  These efforts have resulted in the illegal prosecution and incarceration of the Plaintiff and the Class beyond the limited jurisdiction of the municipal courts.

209.   Further, Harpersville has added increased punishment, fines and costs after adjudication and even where there has been no adjudication of guilt, all without jurisdiction or authority for such under Alabama law.  By adding old fines to current "probation" orders and adding charges for time spent in jail against their will, Harpersville violated the prohibition against ex post facto punishments.

210.   Harpersville has systematically applied *Ala. Code* § 15-18-62 in an unconstitutional fashion, denying the Plaintiff and the Class she seeks to represent constitutionally protected rights.

211.   Section 15-18-62 provides for the imprisonment for the failure to pay fines and costs in limited circumstances and only upon the finding of a willful nonpayment.[14]

---

[14]**Section 15-18-62**
 **Imprisonment for failure to pay fines and costs.**

In cases of willful nonpayment of the fine and costs, the defendant shall either be imprisoned in the county jail or, at the discretion of the court, sentenced to hard labor for the county as follows:

(1) If the fine and costs do not exceed two hundred fifty dollars ($250), no more than 10 days;

(2) If the fine and costs exceed two hundred fifty dollars ($250) but do not exceed five hundred

212.    Under the policies and practices at Harpersville, "offenders" before the municipal court, such as the Plaintiff and the Class she seeks to represent, were systematically imprisoned for nonpayment with no determination of willfulness and with no consideration of their indigency or ability to pay.

213.    Furthermore, once imprisoned, the requirements of time to be served under § 15-18-62 were ignored and many folks were charged extra fines for each day they languished in jail by the practice and policy of Harpersville.

214.    The result of this consistent systematic policy and practice of Harpersville was essentially a debtor's prison for fines and charges levied.

215.    The Plaintiff requests the Court to enjoin the actions of Harpersville identified herein to prevent the resumption of these violations of statutory and constitutional prohibitions.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully prays that the Court will take jurisdiction of this cause and upon the final hearing:

a.    Certify this matter as a proper class action maintainable under Rule 23 of the Federal Rules of Civil Procedure for a plaintiff class;

b.    Award the Plaintiff such damages as this Court shall find the Plaintiff has sustained, together with punitive, or exemplary damages as the law shall permit;

---

dollars ($500), no more than 20 days;

(3) If the fine and costs exceed five hundred dollars ($500), but do not exceed one thousand dollars ($1,000), no more than 30 days; and

(4) For every additional one hundred dollars ($100) or fractional part thereof, 4 days.

c.      Enter declaratory relief which declares the Harpersville contract requiring fees to JCS to be void and in violation of the statutory and constitutional limitations on municipalities;

d.      Enter declaratory relief which enjoins Harpersville from engaging in the violations of law set forth hereinabove;

e.      Enter an injunction and other declaratory relief which prohibits Harpersville in the future from placing persons on probation for collection of fines;

f.      Enter an injunction and other declaratory relief which prohibits Harpersville in the future from assessing fines in excess of $500 and/or extending probation periods beyond 24 months and declare that any previously assessed fines and probationary periods in excess of these limits to be void;

g.      Enter an injunction and other declaratory relief which prohibits Harpersville in the future from imprisoning indigent persons for failure to pay fines and fees and ordering the release of any currently incarcerated indigent persons who were jailed for these reasons;

h.      Award to the Plaintiff and Class members damages under 42 U.S.C. § 1983 equal to any amounts paid on fines and all fees to JCS and Harpersville that are found unconstitutional and/or unlawful (along with interest);

i.      Award to the Plaintiff and Class the cost of this matter, including a reasonable attorneys' fee;

45

j.      Award to the Plaintiff and the Class members such other, further and

more general relief as the Court may deem appropriate under these

circumstances, including cost of these proceedings.

**JURY DEMAND**

Plaintiff demands a trial struck by jury.

RESPECTFULLY SUBMITTED,


s/ *G. Daniel Evans*
G. Daniel Evans
ASB-1661-N76G
Attorney for The Plaintiffs
The Evans Law Firm, P.C.
1736 Oxmoor Road, Suite 101
Birmingham, Alabama 35209
Telephone:  (205) 870-1970
Fax: (205) 870-7763
E-Mail: gdevans@evanslawpc.com


s/ *Alexandria Parrish*
Alexandria Parrish
ASB-2477-D66P
Attorney for The Plaintiffs
The Evans Law Firm, P.C.
1736 Oxmoor Road, Suite 101
Birmingham, Alabama 35209
Telephone:  (205) 870-1970
Fax: (205) 870-7763
E-Mail: ap@evanslawpc.com


s/ *Maurine C. Evans*
Maurine C. Evans
ASB-4168-P16T
Attorney for The Plaintiffs
The Evans Law Firm, P.C.
1736 Oxmoor Road, Suite 101
Birmingham, Alabama 35209
Telephone:  (205) 870-1970
Fax: (205) 870-7763
E-Mail: me@evanslawpc.com

46

s/ *William M. Dawson*
William M. Dawson
ASB-3976-S80W
Attorney for the Plaintiffs
Dawson Law Office
1736 Oxmoor Road
Birmingham, Alabama 35209
Telephone: 205-307-7021
E-Mail: bill@billdawsonlaw.com

Plaintiffs' address:

c/o The Evans Law Firm, P.C.

Defendant's address:

City of Harpersville
P.O. Box 370
Harpersville, Alabama 35078          **PLEASE SERVE BY CERTIFIED MAIL**