FILED

2016 Aug-26  PM 03:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **DANA CARDEN,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **Case No.:  2:15-cv-01381-RDP** |
| } | |
| **THE TOWN OF HARPERSVILLE; et al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

### I.      Introduction

This case is before the court on Defendant The Town of Harpersville's Motion to Stay or Dismiss Plaintiff's Amended Complaint under the *Colorado River* Doctrine (Doc. # 11), Defendant CHC Companies, Inc.'s Joinder in Motion to Dismiss or Stay under the *Colorado River* Doctrine (Doc. # 13), and Defendants Judicial Correction Services, Inc. and Correctional Healthcare Companies, Inc.'s Motion to Stay or Dismiss Plaintiff's Amended Complaint and Motion for Extension of Time to File Responsive Pleading or Motion under Federal Rule of Civil Procedure 12 (Doc. # 14)[1], filed concurrently on September 30, 2015. The Motions are fully briefed. (Docs. # 11, 13, 14, 26, 30, 31, 32). After careful review, and for the reasons set forth below, the court determines that the Motions are due to be denied.

---

[1] On January 29, 2016, the court stayed this case pending the resolution of the present Motions. (Doc. # 42). The stay essentially moots the request for (and need of) an extension of time to file a responsive pleading or motion under Federal Rule of Civil Procedure 12.

## II.   The First Amended and Restated Complaint[2]

Plaintiff brings this action under 42 U.S.C. § 1983, individually and on behalf of a putative class of similarly situated individuals, for violations of her federal civil rights, among other claims.  (Doc. # 6).  She is a resident of Sylacauga, Alabama.  (*Id.* at ¶ 5).  Defendant the Town of Harpersville, Alabama ("Harpersville") is a municipal corporation in Shelby County, Alabama.  (*Id.* at ¶ 6).  The City Council and Mayor control Harpersville's policymaking. (*Id.* at ¶ 7).  Plaintiff alleges that the Mayor and City Council hired the Harpersville Municipal Court judge and contracted for the services of Defendant Judicial Corrections Services, Inc. ("JCS"). (*Id.*).   JCS is a Delaware corporation that operates as "an offender paid system," providing services to governmental entities "free of charge," and is a private probation company that, Plaintiff avers, operated under the color of state law.  (*Id.* at ¶¶ 7-8).  Defendant Correctional Healthcare Companies, Inc. ("CHC") is a Delaware corporation that Plaintiff contends "appears to be the successor of JCS, having purchased or otherwise acquired it, continuing to do business as", and operating, JCS.  (*Id.* at ¶ 9).  Defendant CHC Companies, Inc. ("CHCC") is a Delaware corporation that, Plaintiff believes, wholly owns and fully integrates JCS and CHC, and employs, directs, and controls JCS employees.  (*Id.* at ¶ 10).  For efficiency in writing, and recognizing the pleading standard which applies to the instant motions, in this Memorandum Opinion, JCS, CHC, and CHCC will collectively be referred to as "JCS."[3]

### A.   Harpersville and JCS's Relationship and Contract

Plaintiff alleges the following facts about Harpersville and JCS.  Harpersville contracted with JCS.  (Doc. # 6 at ¶ 13).  JCS's marketing strategy emphasizes that its fees will be paid by

---

[2] In addressing a motion to dismiss, the court accepts as true all the allegations in the complaint and construes them in the light most favorable to Plaintiff.  *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004).

[3] To be clear, those Defendants contest such a grouping on the merits of this case.

2

an "offender" appearing before a municipal court and that its efforts will improve collections of court fines and costs at no cost to a municipality. (*Id.*). Harpersville did not seek bids for this contract, but instead granted JCS the exclusive contract in violation of Alabama Constitution, Article I, § 22, and Alabama Code § 41-16-50. (*Id.* at ¶ 14). JCS does not require its employees to have criminal justice or legal training, social work education, or to meet minimum law enforcement standards (although that is required of state probation officers). (*Id.* at ¶ 17). The "Probation Officers" employed by JCS are only required to be at least twenty-one years of age, a non-felon, have at least two years of college education, and complete forty hours of training about JCS's processes. (*Id.*). JCS Probation Officers previously were permitted to carry JCS-issued badges when they collect fees, court fines, and costs. (*Id.*).

Plaintiff asserts that Harpersville, "by contract and practice," delegated to JCS many of the Harpersville Municipal Court's administrative and judicial functions. (Doc. # 6 at ¶ 18). Harpersville Mayor Theoangelo Perkins signed the agreement between Harpersville and JCS (the "Contract") on March 3, 2005. (*Id.* at ¶ 19; Doc. # 1-2). The Contract provides in pertinent part that the Harpersville Municipal "[C]ourt agrees that each court order shall provide for the following:

A probation fee of $35.00 per month flat fee

One time probationer set up fee of $10.00.

(*Id.*). Mayor Perkins and the City Council approved the Contract on March 3, 2006. (Doc. # 6 at ¶ 20). Harpersville also approved the employment of Larry Ward as a part time judge of the Harpersville Municipal Court. (*Id.*). Plaintiff avers that Harpersville was "fully aware" of JCS's practices and jointly participated in concert with JCS and approved its practices. (*Id.*).

Plaintiff also avers that when a person adjudicated before the Harpersville Municipal

Court (operating under the Contract and JCS's system) was unable to fully pay fines and levied costs, that person was automatically placed on probation with JCS, even if no jail sentence was ordered.  (Doc. # 6 at ¶ 33).  She further asserts that such persons were "routinely" placed on probation without investigation into the person's indigency or the reasons for a failure or inability to pay.  (*Id.*).  Further, she alleges that Judge Ward "routinely signed in blank" probation orders supplied by JCS.  (*Id.*).  JCS later filled in these signed in blank orders, which required individuals to pay to JCS the fines, costs, and additional monthly fees required under the Contract.  (*Id.*).  Plaintiff contends that JCS and Harpersville together implemented this system using JCS's "Probation Tracker" software to focus on the collection of fines and fees.  (*Id.* at ¶ 34).  That collection focus allows probationers to mail in payments if they live thirty or more miles from the JCS office; otherwise, they must pay in person at the designated office.  (*Id.*; *see* Doc. # 1-5).

Additionally, Plaintiff alleges that JCS's training materials provided court forms which were designed to order probation and payments to JCS, as well as sample letters for use after probation was ordered.  (Doc. # 6 at ¶ 34; *see also* Docs. # 1-6, 1-7, 1-8, 1-9).  The letters warned, among other things, that an arrest warrant will be issued and that their court dates cannot and will not be reset.  (*Id.*).  Plaintiff avers that JCS actually sent letters that contained similar language to these samples.  (Doc. # 6 at ¶¶ 43, 45).  She further contends that probationers unable to keep up their payments at Harpersville were arrested typically for a "failure to appear" or "failure to obey court order." (*Id.* at ¶ 35).  Plaintiff asserts that Harpersville issued warrants based on JCS's reports.  (*Id.*).  Persons were arrested and incarcerated for an undetermined period of time with bond set (by the Harpersville Magistrate) to approximate the money JCS claimed was owed, plus more fees which corresponded to time spent in jail. (*Id.*).  Plaintiff

alleges that no procedural or constitutional safeguards were utilized, and costs and fines routinely exceeded the statutory maximum of $500 that municipal courts may award.  (*Id.* at ¶¶ 35, 47). She also avers that Harpersville would add to the probation balance unpaid fines from old traffic tickets, even when those fines predated the probation.  (*Id.* at ¶ 47).  If the fines were paid in full, an individual's probation was terminated.  (*See id.* at ¶ 48).

### B.   Allegations Concerning the State Case

On March 3, 2010, "several people" sued Harpersville, JCS, and others in Shelby County Circuit Court.  *Burdette v. Town of Harpersville, Ala.*, case no. CV-2010-900183 (Shelby Cty. Circ. Ct.) (hereinafter the "State Case").  (Doc. # 6 at ¶ 21).  "In their initial complaint, the state court plaintiffs sought to obtain damages as well as declaratory and injunctive relief for themselves and for those similarly situated."  (*Id.*).  The State Case resulted in an investigation of the Harpersville Municipal Court and raised questions "regarding the integrity of that court and [Harpersville's] processes and procedures in fine collection."  (*Id.* at ¶ 22).  On July 17, 2012, the plaintiffs in the State Case filed an amended complaint asserting class claims and requesting damages and injunctive relief.  (*Id.* at ¶ 23).  Plaintiff asserts that the state court has not (as of September 4, 2015) certified a damage class, and the State Case is still pending without a class certification scheduling deadline.[4]  (*Id.* at ¶ 24).

Despite the filing of the State Case, Plaintiff alleges that Harpersville's fine collection system continued until July 11, 2012, when Shelby County Circuit Judge Hub Harrington entered an order on enjoining many of Harpersville's actions.  (Doc. # 6 at ¶¶ 26-29; Doc. # 1-3). On August 8, 2012, Harpersville dissolved the Harpersville Municipal Court.  (Doc. # 6 at ¶ 30).

---

[4] Plaintiff points out (and the undersigned is keenly aware) that, on August 28, 2012, several other persons sued JCS in federal court for practices in the City of Childersburg, Alabama, for civil rights violations and asserting class claims for damages and injunctive relief.  (Doc. # 6 at ¶ 25).  *See Ray v. Judicial Correction Servs., Inc.*, Case No. 2:12-cv-2819-RDP (N.D. Ala.).

Subsequently, on December 27, 2012, Shelby County Assistant District Attorney Alan Miller filed a motion in the Shelby County District Court requesting that it "remit all outstanding fees, fines and costs and to establish this account as 'Paid in Full'" for all the then existing traffic cases (listed on that motion).  (Doc. # 6 at ¶ 31; Doc. # 1-4).  That same day, Shelby County District Judge Ronald Jackson granted that motion, ordering all the traffic cases listed in that motion were declared "PAID IN FULL," and recalling, setting aside, and holding for naught any warrants associated with those cases.  (*Id.*).  However, Plaintiff alleges, Harpersville has not taken any action to reimburse the persons forced to pay illegal fees or compensate those who were imprisoned or otherwise damaged by Harpersville's collection system.  (Doc. # 6 at ¶ 32).

## C.      Factual Allegations Concerning Plaintiff

Plaintiff alleges that she (and others similarly situated to her) were unable to pay in full fines levied by the Harpersville Municipal Court and placed on probation with JCS.  (Doc. # 6 at ¶ 62).  She seeks to represent two classes consisting of the following: (1) "All individuals who have been assigned by the Harpersville Municipal Court to "probation" with [JCS] for the collection of fines," and (2) "All individuals who, despite their indigency, were incarcerated without consideration of their indigency for failure to pay fines, charges and fees to Harpersville."  (*Id.* at ¶ 6).

Plaintiff was indigent and incarcerated for failure to pay JCS fines and fees.  (*Id.*).  Harpersville Police Officer Scott Baggett stopped and issued citations to Plaintiff in 2007 for speeding, driving with no insurance, and driving without a license.  (*Id.* at ¶¶ 63-64).  The citation did not include a court date, and Officer Baggett told her to expect a letter from Harpersville within thirty to sixty days notifying her of her court date.  (*Id.* at ¶¶ 64-65).  Plaintiff never received notice or any such letter.  (*Id.* at ¶ 66).

On May 22, 2010, Plaintiff was riding in a vehicle and stopped by a road black in Sylacauga.  Sylacauga Police Officers Mike Moore and Norman Dobbs informed her she had three outstanding warrants for failure to appear by Harpersville.  (Doc. # 6 at ¶ 67).  Officers Moore and Dobbs arrested her and took her to the Shelby County jail.  (*Id.* at ¶ 68).  A cash bond of $1,434 was imposed on Plaintiff even though she was indigent, not a flight risk, and was caring for her five-month-old premature infant child.  (*Id.* at ¶ 69).  She was unable to post the bond.  (*Id.*).  A public defender was listed on Plaintiff's jail records, but she never saw or talked to a lawyer, and no one requested a lesser or alternate bond for her.  (*Id.* at ¶ 70).  Plaintiff remained in the county jail for nearly three weeks until Harpersville had its next court session on June 10, 2010.  (*Id.*).

On June 10, 2010, Plaintiff and approximately twenty others were transported from the Shelby County jail to the Harpersville Municipal Court.  (Doc. # 6 at ¶ 71).  They were all dressed in orange jumpsuits, shackled, placed in handcuffs, and seated on the front row of seats in the courtroom.  (*Id.*).  Judge Larry Ward "quickly processed" each person.  (*Id.* at ¶ 73).  No inquiry was made about any inmate's economic status, even though Plaintiff asserts they could not post the cash bond demanded of them.  (*Id.* at ¶ 74).  However, if an inmate's family member or employer was present in court, they were called to explain why they could not pay the bonds.  (*Id.* at ¶ 75).  Plaintiff went before Judge Ward when her name was called; she was not represented by counsel.  (*Id.* at ¶ 77).  She was not employed at that time and none of her family could attend court.  (*Id.* at  ¶ 78).  She was ordered to JCS probation due to her unpaid traffic tickets from 2007, and was given no credit for the nineteen days spend in jail.  (*Id.* at ¶¶ 80-81).  Instead, Harpersville added daily jail charges to the amount Plaintiff purportedly owed.  (*Id.* at ¶ 81).

Plaintiff was ordered to sign papers in exchange for release from jail.  (Doc. # 6 at ¶ 82). She in fact signed these papers, including a probation order requiring her to make monthly payments of $145 toward fines, costs, and fees totaling $1,662, starting within thirty days of signing.  (*Id.* at ¶¶ 82, 84).  She also was required to pay JCS $45 each month she was on probation, and to pay JCS a $10 set up fee.  (*Id.* at ¶ 83).  In addition, the preprinted probation order listed "conditions" of probation that restricted her liberty, and contained a warning that Plaintiff would be subject to arrest if she violated any condition imposed by the order.  (*Id.* at ¶ 85).

After being placed on probation with JCS, Plaintiff was charged a total of $2,173 for the 2007 traffic violations.  (Doc. # 6 at ¶ 87).  That amount contained up-charges for the daily jail fees.  (*Id.* at ¶ 88).  Ultimately, JCS demanded Plaintiff pay $2,143 to Harpersville and $1,070 to JCS.  (*Id.* at ¶ 90).  She could not pay these amounts, so Harpersville issued another warrant for her arrest.  (*Id.* at ¶ 92).

Despite the orders issued in the State Case, neither Plaintiff nor any of the class she seeks to represent has received compensation for damages sustained.  (Doc. # 6 at ¶¶ 100, 103). Likewise, she has never received notice from Harpersville or JCS that her probation was terminated, her fine balance was declared paid in full, or her arrest warrant had been recalled. (*Id.* at ¶ 101).  Once Plaintiff heard the Harpersville tickets had been cleared by court order, she called the clerk's office and was told that there were some cancelations, but she did not receive confirmation that the outstanding warrant for her arrest was recalled.  (*Id.* at ¶ 102).

Based on these allegations, Plaintiff advances the following twelve claims: (1) denial of due process, under the Fourteenth Amendment, by Harpersville; (2) denial of due process, under the Fourteenth Amendment, by JCS; (3) violation of the Fourth Amendment by Harpersville; (4)

violation of the Fourth Amendment by JCS; (5) violation of the Sixth Amendment by Harpersville; (6) violation of the Sixth Amendment by JCS; (7) violation of the Eighth Amendment by Harpersville; (8) violation of the Eighth Amendment by JCS; (9) denial of equal protection, under the Fourteenth Amendment, by Harpersville; (10) denial of equal protection, under the Fourteenth Amendment, by JCS; (11) a claim for declaratory, prospective, and retroactive injunctive relief that the Harpersville-JCS contract is void *ab initio*; and (12) a claim for declaratory, prospective, and retroactive relief preventing Harpersville from resuming the alleged activities in the future.  (Doc. # 6).

Finally, Plaintiff alleges four causes of action for violation of the civil federal Racketeering Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. §§ 1962(a), 1962(b), 1962(c), and 1962(d)).[5]  (Doc. # 6).  Specifically, she avers that, from 2005 until the Harpersville Municipal Court was closed in 2012, Defendants constituted an association-in-fact enterprise with the common purpose, essentially, of extorting funds from impoverished individuals in exchange for their freedom.  (*Id.* ¶¶ 321-340).  Plaintiff asserts that scheme had an interstate nexus because: (1) "JCS employees were also employees of CHCC after CHCC fully integrated its subsidiaries"; (2) JCS operated in Alabama, Florida, Mississippi, and Georgia, and had its corporate financial office in Georgia; (3) at all relevant times CHCC ("which jointly employed JCS employees and controlled their operations") was headquartered in Colorado; and (4) the enterprise deposited moneys received from the scheme into federally insured banks in Alabama before these funds were transferred into JCS's corporate accounts.  (*Id.* at ¶¶ 335-337).  Plaintiff alleges that Defendants engaged in a pattern of racketeering activity by committing predicate acts of extortion in violation of the Hobbs Act, 18 U.S.C. § 1951, Alabama Code §

---

[5] Plaintiff states that Counts Twelve through Sixteen follow the same factual RICO background, but she does not include a Count Twelve in the Amended Complaint.  (*See* Doc. # 6).

13A-8-13, and the Travel Act, 18 U.S.C. § 1952.  (*Id.* at ¶¶ 341-371).  The precisely alleged extortionate acts are that Defendants threatened Plaintiff and purported class members that if they did not agree and pay the probation set-up and monthly fees and fines they (1) would be incarcerated, (2) would have their probation revoked, (3) would be accused by JCS of violating an Order of Probation, and (4) would face testimony by JCS against them concerning non-payment but without any investigation into reasons for non-payment.  (*Id.* at ¶ 342-44).

On the basis of these claims, Plaintiff requests that the court (1) certify this matter as a Rule 23 class action, (2) award compensatory and punitive, treble, or exemplary damages, (3) award damages under Section 1983 equal to amounts paid on fines and all fees that are found to be unconstitutional, (4) award attorney's fees, and (5) order Defendants to "disgorge their ill-gotten gains derived from their unlawful conduct."  (Doc. # 6 at pp. 85-86).  Further, Plaintiff prays for declaratory and injunctive relief declaring the Contract void and in violation of the law, and enjoining Harpersville from: (1) engaging in the violations of the law it is alleged to have committed, (2) placing persons on probation for collection of fines in the future, (3) in the future assessing fines in excess of $500 and extending probation periods beyond twenty-four months, and declaring previously assessed fines and probationary periods in excess of those amounts void, and (4) imprisoning indigent persons for failure to pay fines and fees and ordering the release of any currently incarcerated indigent persons jailed for these reasons.  (*Id.* at p. 85).

**III.    Procedural History**

Plaintiff filed her initial Complaint on August 14, 2015 (Doc. # 1), and her First Amended and Restated Complaint on September 4, 2015.  (Doc. # 6).  Defendants responded by filing the present Motions, arguing, in part, that the court should abstain from hearing Plaintiff's

case based on the *Colorado River* Doctrine.[6]  (Docs. # 11, 13, 14).  They also contend that this case is duplicative of the State Case, and that one of Plaintiff's attorneys (William M. "Bill" Dawson) represents a class of individuals in that case virtually identical to the class he seeks to represent here.  (Doc. # 11).  Further, they assert that the certified class in the State Case is a mandatory, nonopt-out class under Alabama Rule of Civil Procedure 23(b)(2), which includes Plaintiff.  (*Id.*).  Defendants also argue that Mr. Dawson continues to seek a punitive damages class in that case—which is over five years old.  (*Id.*).  Moreover, they assert that the Contract has been terminated, Harpersville disbanded its municipal court, and all fines have been forgiven.  (*Id.*).  And, Defendants contend that maintaining two actions would waste judicial resources and may result in piecemeal litigation.  (*Id.*).  Alternatively, they argue that the first-filed rule advocates dismissal of this case.  (*Id.*).

Plaintiff opposes the Motions, arguing that the State Case is a non-parallel action, but, in any event, even if the *Colorado River* Doctrine applies, its factors weigh against abstention. (Doc. # 26).  She also contends that the first-filed rule is inapplicable.  (*Id.*).

In reply, Defendants, among other things, point to recent news that JCS was discontinuing all practices in and leaving the State of Alabama.  (Docs. # 30, 31, 32).

The court previously stayed this case pending the resolution of Defendants' Motions. (Doc. # 42).

---

[6] Although CHCC advances its own arguments in its reply brief (Doc. # 30), JCS, CHC, and CHCC have "joined" with Harpersville's arguments.  (Docs. # 13, 14, 32).  Accordingly, where applicable, the court primarily cites to Harpersville's briefs.  (Docs. # 11, 31).  Further, CHCC in its reply brief argues it should be dismissed for various reasons more aligned with a motion under Federal Rule of Civil Procedure 12(b)(6).  (Doc. # 30).  Although CHCC in its initial brief raises cursory arguments (in addition to those in Harpersville's briefs in which it joins) that it is unnecessary to name it as a party-defendant (Doc. # 13), the court need not rule on any of those arguments as requests for dismissal under Rule 12(b)(6). To the extent Plaintiff asserts CHCC should be in this case, and CHCC contends it should not be in this case (due to a Reverse Merger Agreement), that is a matter best resolved by summary judgment.  Accordingly, the court does not consider any of those Rule 12(b)(6) arguments here.

## IV.    The State Court Action

The State Case was initiated March 3, 2010.  (Doc. # 6 at ¶ 21; Doc. # 11 at p. 1).  The initial complaint requested declaratory and injunctive relief only against Harpersville, JCS, Mayor Theoangelo Perkins in his official capacity, Chief of Police Paul Brasher in his official capacity, Judge Larry Ward, and clerk of the court Penny Hall.  (Doc. # 26 at p. 1).  The State Case plaintiffs (the "State Case Plaintiffs") filed an amended complaint on September 16, 2010, again requesting only declaratory and injunctive relief.  (*Id.* at pp. 1-2).

On October 20, 2011, the State Case Plaintiffs filed their Second Amended Complaint. (Doc. # 26-1).  The defendants targeted in that complaint are Harpersville and JCS (collectively, the "State Case Defendants").  (*Id.* at ¶¶ 3, 4).  The State Case Plaintiffs sought money damages individually, and declaratory and injunctive relief on behalf of a putative class pursuant to Alabama Rule of Civil Procedure 23(b)(2).  (*Id.* at ¶¶ 1, 7).  The putative class that the State Case Plaintiffs sought to certify in the Second Amended Complaint is defined in this manner:

> All persons who are, have been, or will be incarcerated by the Defendants in whole or in part for failure to pay fines and/or court costs, or whose sentences include a period of days for failure to pay fines and/or court costs, where Defendants made no determination as to such persons' financial ability to pay fines and/or court costs and did not provide such persons[] with their constitutional right to counsel, and who were otherwise the subject of the constitutional abuses described in this Complaint.

(*Id.* at ¶ 7).  Plaintiff Carden is not a named individual plaintiff in the State Case.

The facts alleged in the Second Amended Complaint filed in the State Case, although tailored to reflect the allegations made by the four individual State Case Plaintiffs, are similar to those asserted in this case.  (*See* Doc. # 26-1).  The causes of action advanced against the two remaining State Case Defendants are: (1) deprivation of rights under the Fourth, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments to the United States Constitution in violation of

42 U.S.C. § 1983; (2) deprivation of the right to due process under the United States and Alabama Constitutions; (3) violation of the right to equal protection under these two constitutions; (4) violations of the Thirteenth Amendment to the United States Constitution; and (5) false imprisonment in violation of the United States and Alabama Constitutions, Alabama Code § 6-5-170, and common law. (*Id.*). Additionally, the State Case Plaintiffs aver two causes of action against JCS only: (1) abuse of process, and (2) negligence and wantonness. (*Id.*). One of the individual State Case Plaintiffs has a claim for lost income and wages under 42 U.S.C. § 1983. (*Id.* at ¶ 63).

On May 5, 2012, the State Case Plaintiffs and Harpersville filed a joint stipulation as to class certification. (Doc. # 26-2). In that joint stipulation, Harpersville consented to the putative class described in the Second Amended Complaint regarding injunctive relief only, in exchange for the State Case Plaintiffs' waiver of attorney's fees and costs concerning that class claim. (*Id.* at ¶¶ 1-3).

On May 25, 2012, the Shelby County Circuit Court certified "the class claims for declaratory and injunctive relief pursuant to Rule 23(b)(2) of" the Alabama Rules of Civil Procedure. (Doc. # 11-10). In that same order, the "court *sua sponte* bifurcate[d] for trial the class claims . . . following the jury trial of the plaintiffs' individual money damage claims" (which was then scheduled for September 10, 2012). (*Id.*). Additionally, the court found the money damage claims appropriate for mediation and ordered the parties to mediate those claims within ninety days of that order. (*Id.*). The non-jury bench trial on class injunctive relief was set for February 18, 2013. (*Id.*).

Judge Harrington entered a preliminary injunction against Harpersville on July 11, 2012. (Doc. # 11-11; Doc. # 1-3). He set a hearing concerning further injunctive relief for August 20,

2012.  (*Id.* at ¶ 1).   However, on July 17, 2012, the State Case Plaintiffs filed their Third Amended Complaint.  (Doc. # 11-2).  This pleading mirrored the Second Amended Complaint in most relevant aspects, but with one significant addition: the putative class allegations now extended to an Alabama Rule of Civil Procedure 23(b)(3) damages class (and kept in place the Rule 23(b)(2) injunctive relief class).  (*Id.* at ¶¶ 7-10).  Further, the State Case Plaintiffs now proposed three different classes under Rules 23(b)(2) and (3).  (*See id.*).  The first of those newly proposed classes was the same as the single class sought in the Second Amended Complaint. (*Id.* at ¶ 7).  The second putative class was defined to include: "All persons who are or who have been jailed by the Defendants for the non-payment of fines, court costs and/or collection fees, and where Defendants have imposed jail fees on such persons, charging $31.00 per day for the incarceration, thereby illegally extending the jail time and increasing the amounts claimed for all such persons."  (*Id.* at ¶ 8).  The third putative class was composed of: "All persons who are or who have been charged the collection fee of $45.00 per month by JCS, as opposed to the $35.00 monthly charge as initially set by the Defendants in their contract with each other."  (*Id.* at ¶ 9).

The Harpersville Town Council passed Ordinance No. 12-0808 on August 8, 2012. (Doc. # 11-12).  That ordinance abolished the Harpersville Municipal Court and transferred its jurisdiction to the Shelby County District Court.[7]  (Doc. # 11-12).  Pursuant to applicable Alabama law, that ordinance would take effect within ninety days, and all cases would be transferred in at least eighty days, after its passage.  (*Id.*).  The next day (August 9, 2012), the Sheriff of Shelby County executed a search warrant on the Harpersville Municipal Court and the Harpersville Police Department, and seized, among other things, municipal court records.  (*Id.*). Based upon these events, on August 16, 2012, Judge Harrington issued an order which, among

---

[7] Of course, discovery had taken place in the State Case through this point in time.  (*See* Docs. # 11-3 through 11-9).

other things, required: (1) the abolition of the Municipal Court effective immediately, (2) the transfer jurisdiction of all pending cases before that court to the Shelby County District Court, (3) termination of the authority of the Municipal Court judge, (4) the cessation all collection activities by JCS and any of the Municipal Court's agents, (5) a stay of all pending payment obligations of past and present defendants in that court, and (6) the adoption of all seized court records into the record of the State Case.  (*Id.* at ¶¶ 1-11).

Judge Harrington entered a Final Order for Injunctive Relief on September 25, 2012.  (Doc. # 11-15).  That order operated to prospectively enjoin Harpersville and, in the event it was reestablished, the Harpersville Municipal Court.  (*See id.*).  The State Case Defendants appealed that order, but Judge Harrington *sua sponte* vacated it to afford the parties a full evidentiary hearing or trial on the merits, should they desire one.  (Doc. # 11-16).

The State Case then more or less sat dormant for some time.  (Doc. # 26-3 at ¶ 2).  State Case Plaintiffs moved for a status conference and scheduling order on December 19, 2014.  (Doc. # 11-17).  However, on March 18, 2015, the Shelby County Circuit Court "continued generally" the State Case, and ordered that it "shall be reset upon motion of either party."  (Doc. # 11-1).

On August 14, 2015, Plaintiff filed this case, (Doc. # 1), followed by the First Amended and Restated Complaint which was filed on September 4, 2015.  (Doc. # 6).

On August 26, 2015, the Shelby County Circuit Court entered an order returning all previously seized Harpersville Municipal Court records to Harpersville.  (*See* Doc. # 11-14 at ¶ 4). The parties unsuccessfully mediated the State Case on September 23, 2015.  (Doc. # 11 at p. 7).  Subsequently, on September 25, 2015, Harpersville requested a status conference and

scheduling order.   (Doc. # 11-13).   The Shelby County Circuit Court set a status hearing for October 26, 2015.   (*Burdette*, CV-2010-900183, Doc. # 521).

Also, on September 25, 2015, Harpersville moved for injunctive relief in the form of the Circuit Court lifting its July 11, 2012 preliminary injunction.   (Doc. # 11-14).   Harpersville made this request because it planned to call a council meeting on October 5, 2015, to consider reestablishing the Municipal Court, with the actual "start" date for the reestablishment of that court scheduled for January 12, 2016.   (*Id.* at ¶ 9).   The Shelby County Circuit Court held a hearing on that motion on December 14, 2015; however, by order dated January 12, 2016, that court scheduled another hearing for January 19, 2016.   (*Burdette*, CV-2010-900183, Doc. # 558). It is not clear from the docket in the State Case whether the January 19, 2016 hearing was actually held (and, if so, what occurred).   Further, although the Circuit Court set the State Case for a trial on November 7, 2016 (*id.* at Doc. # 539), it is not clear from the State Case docket whether that trial date remains in place.   (This court has not located any order re-setting the trial date, but, on Alacourt.com, that date is not presently listed under "Settings").   The State Case docket does indicate that the parties have undertaken additional discovery.

## V.   Discussion

After careful review, the court concludes that Defendants' Motions are due to be denied.

### A.   The *Colorado River* Doctrine

Under the *Colorado River* Doctrine of "exceptional circumstances," a federal district court may "dismiss or stay an action when there is an ongoing paralegal action in state court." *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004) (*per curiam*) (quoting *LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1558 (7th Cir. 1989)).   The principles of that Doctrine "rest on considerations of wise judicial administration, giving regard to

conservation of judicial resources and comprehensive disposition of litigation." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1328 (11th Cir. 2004) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

"Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River*, 424 U.S. at 817. "Federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Ambrosia Coal*, 368 F.3d at 1328 (quoting *Colorado River*, 424 U.S. at 817). However, a federal court may defer to a parallel state proceeding under "limited" and "exceptional" circumstances. *Moorer*, 374 F.3d at 997 (citing *Colorado River*, 424 U.S. at 817-18).

There is no bright-line test for determining when an existing, concurrent state case warrants federal court abstention in a parallel federal case. *Ambrosia Coal*, 368 F.3d at 1328. Nonetheless, the Eleventh Circuit has indicated that a district court may consider the following factors in determining whether exceptional circumstances exist:

> (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the order in which jurisdiction was obtained and the relative progress of the two actions; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties.

*Moorer* 374 F.3d at 997 (citations omitted). Of course, "[t]he decision whether to dismiss [or stay] 'does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Id.* (quoting *Moses H. Cone Meml. Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 16). The weight attributed to each factor varies on a case-by-case basis, and depends on the particularities of that case. *Id.* A single factor alone can be the sole reason for abstention. *Id.*

17

After performing the analysis, if a federal court determines the *Colorado River* Doctrine applies and that it should defer to a parallel state-court proceeding, the court must stay, and not dismiss, the federal case.  *Moorer*, 374 F.3d at 998 (citations omitted).  Thus, here, the court asks two questions: (1) whether there is a state-court proceeding that is sufficiently parallel to this action; and (2) if so, applying the factors discussed above, do exceptional circumstances exist that counsel toward staying this action.

**1.      This Matter Is Sufficiently Parallel to the State Case**

As an initial matter, the court must determine whether the *Colorado River* Doctrine is implicated in this case.  In order for the *Colorado River* Doctrine to apply, there must be a state case parallel to the federal one.  *Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013) (citation omitted).  The federal and state proceedings do not require the parties, issues, and requests for relief to be identical.  *Ambrosia Coal*, 368 at 1329.  "The crucial question is whether the 'similarity between the two cases is sufficient to justify the conclusion that the state court litigation will be an adequate vehicle for the complete and prompt resolution of the issue between the parties.'"  *Sini v. Citibank, N.A.*, 990 F. Supp. 2d 1370, 1376 (S.D. Fla. 2014) (quoting *Brown v. Blue Cross & Blue Shield of Fla., Inc.*, No. 11-cv-80390, 2011 WL 11532078, at *8 (S.D. Fla. Aug. 8, 2011)).  A district court may appropriately undertake the *Colorado River* analysis when the "federal and state proceedings involve substantially the same parties and substantially the same issues."  *Ambrosia Coal*, 368 F.3d at 1330.

The State Case filed by the State Case Plaintiffs alleges claims of state common law and statutory torts, in addition to constitutional violations under 42 U.S.C. § 1983 of the Fourth, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments to the United States Constitution, deprivation of the rights to due process and equal protection under the United States and

Alabama Constitutions, and a standalone Thirteenth Amendment cause of action.  (Docs. # 26-1, 11-2).  These claims are asserted against JCS (*i.e.*, not CHC or CHCC) and Harpersville.  (*Id.*).  The State Case Plaintiffs request damages and injunctive relief on an individual and class basis against Harpersville and JCS.  (*Id.*).

In this action, Plaintiff raises claims pursuant to 42 U.S.C. ¶ 1983 against Harpersville, JCS, CHC, and CHCC.  These claims include denial of due process and equal protection under the Fourteenth Amendment, and violations of the Fourth, Sixth, and Eighth Amendments to the United States Constitution.  (Doc. # 6).  Plaintiff also alleges four RICO causes of action against these Defendants.  (*Id.*).  She requests damages and injunctive relief for herself and a putative class.

After reviewing the state action and federal action, the court finds that the two cases are parallel for purposes of the *Colorado River* analysis.  To be sure, and as Plaintiff emphasizes, this case includes more Defendants and seeks discovery on matters not necessarily before the Shelby County Circuit Court.  And Plaintiff has pleaded the facts underlying her claims in this action with much more particularity than have the State Case Plaintiffs in the State Case.  Nonetheless, the underlying facts concerning Defendants in the two cases are substantially similar, and arise from the same alleged practices and procedures of Harpersville and JCS.  Thus, the court concludes that this case and the State Case involve substantially the same parties and issues, making them parallel actions under the *Colorado River* Doctrine.

### 2.    Although the Federal and State Cases Are Parallel, the *Colorado River* Factors Weigh Against Federal Abstention

Because the court has determined that this case is parallel to the State Case under the *Colorado River* Doctrine, it examines, in turn, the six factors discussed in *Moorer* to determine if abstention is appropriate, and whether the federal case is vexatious or an attempt at forum-

shopping. *Moorer*, 374 F.3d at 997. After careful review, the court determines that abstention is not appropriate in this case.

### a.        Jurisdiction Over Property

The first factor concerns whether one court has assumed jurisdiction over property that is before another court. *Jackson-Platts*, 727 F.3d at 1141. Defendants argue that this factor weighs in favor of abstention because the Shelby County Circuit Court has assumed jurisdiction over a mandatory, nonopt-out class under Alabama Rule of Civil Procedure 23(b)(2).     But that argument misses the mark entirely.   This first factor is applicable "only where there is a proceeding *in rem*." *Jackson-Platts*, 727 F.3d at 1141. "Put differently, where 'there is no *real* property at issue,' this factor does not favor abstention." *Id.* (quoting *Maharaj v. Secy. Dept. of Corr.*, 432 F.3d 1292, 1306 (11th Cir. 2005)) (emphasis in original). There is no real property at issue (or even involved) in either this action or the State Case, and the State Case is not an *in rem* proceeding.[8] Therefore, this factor does not favor abstention.

### b.        Relative Inconvenience of the Fora

The second factor concerns whether the federal forum is inconvenient, focusing "primarily on the physical proximity of the federal forum to the evidence and witnesses." *Jackson-Platts*, 727 F.3d at 1141 (citation omitted). The parties and this court agree that both the federal and state courts are equally convenient to the parties. (Doc. # 11 at pp. 18-19; Doc. # 26 at p. 13) (pointing out that Plaintiff's proximity to the federal and state courthouses is only a fifteen-mile difference). Because both fora are equally convenient, this factor does not support

---

[8] Defendants cite language from the Eleventh Circuit that "lengthy, complicated litigation" can be the "virtual equivalent of a *res*." (*See* Doc. # 11 at p. 18); *Juris v. Inamed Corp.*, 685 F.3d 1294, 1339 (11th Cir. 2012) (quoting *Battle v. Liberty Natl. Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir. 1989)). Defendants miscomprehend the context of the Eleventh Circuit's statements. The Eleventh Circuit has found "lengthy, complicated litigation" to be the "virtual equivalent of a *res*" in a limited situation—that is, under the "necessary in aid of jurisdiction" exception to the Anti-Injunction Act. *See Juris*, 685 F.3d at 1338-40; *Battle*, 877 F.2d at 880-882. The Anti-Injunction Act is not implicated in this case.

abstention. *Jackson-Platts*, 727 F.3d at 1141 (citations omitted).

> c.      **The Order of Jurisdiction and the Progress of the State Case**

In applying the third factor, the court considers which forum acquired jurisdiction first. "The Supreme Court clarified that, despite somewhat misleading phrasing in *Colorado River*, this factors 'should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.'" *Ambrosia Coal*, 368 F.3d a 1333 (quoting *Moses H. Cone*, 460 U.S. at 21). "This factor, as with the other *Colorado River* factors, is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Jackson-Platts*, 727 F.3d at 1142 (quoting *Moses H. Cone*, 460 U.S. at 21).

Defendants argue that the State Case has advanced further than this action, noting that it was filed in 2010, discovery has occurred, a preliminary injunction has been entered.  (Doc. # 11 at pp. 22-23).  But these arguments demonstrate precisely why the inquiry related to this factor is less concerned with the "chronological order in which the parties initiated the concurrent proceedings." *Jackson-Platts*, 727 F.3d at 1142 (citation omitted).  Although the State Case is now approximately six years old, it has essentially rested dormant from September 2012 until September 2015.  (*See* Doc. # 26-3).  There has been no final injunctive relief entered in the State Case.

Having said that, the parties in the State Case have undeniably undertaken discovery, and have recently resumed discovery with the end goal of a trial.  Much of that discovery has focused on the claims of individual State Case Plaintiffs, identification of witnesses, and general factual discovery.[9]  (*See* Docs. # 11-3 through 11-9).  But there is no indication the discovery in the

---

[9] To be clear, this court is not aware of what the more recent discovery undertaken in 2016 in the State Case entails.

State Case has examined the role, if any, of CHC or CHCC, and, of course, no discovery has been conducted with respect to the individual claims of Plaintiff in this case.

Further, although it appears a trial date has been set in the State Case (*Burdette*, CV-2010-900183, Doc. # 539), that date is not presently listed on the "Settings" portion of the case page at Alacourt.com.  The court notes that a trial date was previously set in the State Case in 2012, but no trial occurred.  And, even if the State Case is tried in November 2016, it appears that based upon the rulings in the State Case, it would at most involve the State Case Plaintiffs' individual claims, and, possibly, class claims for injunctive relief.  No damages class was ever certified in the State Case, and it is uncertain at best that any November trial (even if one takes place) would reach damages issues.

Taking all of these circumstances into account, the court notes that State Case has not progressed to a great degree and its exact status is unclear.  *Mobile Cty. Water, Sewer & Fire Protection Auth., Inc. v. Mobile Area Water & Sewer Sys., Inc.*, No. 07-cv-0357, 2007 WL 2460754, at *5 (S.D. Ala. Aug. 27, 2007).  Therefore, while this factor may favor abstention, it does so only slightly.

### d.    The Potential for Piecemeal Litigation

The fourth factor calls for the court to examine the potential for piecemeal litigation.  But the question is not simply whether denial of a stay could lead to piecemeal litigation.  "Run of the mill piecemeal litigation will not do: this factor 'does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious.'"  *Jackson-Platts*, 727 F.3d at 1142 (quoting *Ambrosia Coal*, 368 F.3d at 1333).  Nor does this factor favor abstention when litigation is "inevitably piecemeal."  *Id.* (quoting *Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assocs.*, 743 F.2d 1519, 1525 (11th

Cir. 1984)).

This case and the State Case rely on the same underlying premise—that is, the practice and custom of Harpersville, its Municipal Court, and JCS.  There are additional claims raised in the State Case that are not raised here, but there are also additional claims raised here that have not been advanced in the State Case.[10]  Moreover, there are additional Defendants in this case. Thus, although there will inevitably be some overlap, the court does not think that overlap will be "abnormally excessive or deleterious."  *Jackson-Platts*, 727 F.3d at 1142 (quoting *Ambrosia Coal*, 368 F.3d at 1333).

Furthermore, the court determines that there are few concerns about mootness raised by these cases.  Similarly, the preliminary injunction entered in the State Case is not final and binding, and certainly is not *res judicata* as to any claims in this case.[11]  Defendants argue that the court will nonetheless have to revisit the same injunctive relief issues raised by the Shelby County Circuit Court.  (*See* Doc. # 11 at p. 20).  To an extent, that may be so.  But, if final injunctive relief is entered in the State Case on behalf of an Alabama Rule 23(b)(2) class, there is some question whether that final injunctive relief would  preclude this court's consideration of

---

[10] Although Harpersville argues that Plaintiff's RICO claims fail as a matter of law (Doc. # 11 at p. 21), the present Motions were not made pursuant to Federal Rule of Civil Procedure 12(b)(6), and the court passes no judgment on the merits of any of Plaintiff's claims.  Defendants are free to raise arguments concerning the merits of Plaintiff's allegations in a subsequent Rule 12(b)(6) motion, or a later motion for summary judgment.

[11] To be sure, there are concerns about these two cases "racing to judgment," including possible application of the doctrine of collateral estoppel if the State Case does go to trial in November 2016, or later.  Trial of the State Case Plaintiffs' claims may implicate certain liability issues and JCS and Harpersville could be collaterally estopped in this case on certain issues.  Based upon the court's understanding of the progression of the State Case, Plaintiff's class claims may also be implicated by any judgment in the State Case.  While the court concludes that these concerns and possibilities are separate from the *Colorado River* and first-filed rule analyses undertaken in this opinion, the court fully expects to take up these matters with the parties.  In a separate order, the court will direct the parties to provide a joint report on the status of the State Case, and whether Plaintiff's class claims are due to be stayed in light of any November trial of the State Case, bearing in mind the interests of preserving judicial resources, and in fairness to the parties.

Plaintiff's individual and class injunctive relief claims *only*.[12]  Again, the court's understanding is that no damages class has been certified in the State Case, and the only damages claims that may proceed to trial are those of the four individual State Case Plaintiffs.

For these reasons, the court determines that, while some piecemeal litigation is inevitable, any threat of abnormally excessive or deleterious piecemeal litigation is overstated by Defendants.  This factor is neutral.

### e.    Whether Federal Law Provides the Rule of Decision

The fifth factor considers whether state or federal law applies.  "This factor weights in favor of abstention only where the applicable state law is 'particularly complex or best left for state courts to resolve.'"  *Sini*, 990 F. Supp. 2d at 1380 (quoting *Jackson-Platts*, 727 F.3d at 1143).  This case involves federal constitutional law claims under 42 U.S.C. § 1983, and federal statutory law (RICO).  (*See* Doc. # 6).  The State Case involves federal and state constitutional law, in addition to state common law and statutory torts.  (Docs. # 26-1, 11-2).  As Defendants note, both the state and federal court are bound to follow federal constitutional law.  (Doc. # 11 at p. 23).  *See, e.g.*, *Ex parte Royall*, 117 U.S. 241, 251 (1886) (recognizing that federal and state "courts [are] equally bound to guard and protect rights secured by the constitution").  On the other hand, the State Case may ultimately resolve only issues of state law or the Alabama Constitution.  This case inevitably turns on federal law.  This factor weighs against abstention.

### f.    Whether the State Court Can Adequately Protect the Parties' Rights

This final factor requires the court to consider the adequacy of the respective fora to protect the parties' rights.  The state court is fully equipped to protect the parties' rights.  "The fact that both forums are adequate to protect the parties' rights merely renders this factor

---

[12] In any event, the court has serious doubts about Plaintiff's ability to certify a Federal Rule 23(b)(2) class for injunctive relief in this case.  But, the court and parties will cross that bridge only when, and if, we come to it.

neutral." *Jackson-Platts*, 727 F.3d at 1143 (quotation and additional citation omitted).   The parties agree that this factor is neutral.

> **g.   This Case Is Not Vexatious or an Attempt at Forum-Shopping**

Defendants contend that this case is "vexatious" and "reactive in nature," and an impermissible attempt at forum-shopping.   The court disagrees.

First, in their initial briefs, Defendants concede that Plaintiff's "motives for filing this action are not known."   (Doc. # 11 at p. 25).   They nonetheless contend that, at best, this case is an attempt to bypass the State Case.   (*See id.*).   There is no additional argument as to this element, and Defendants have not addressed it further in their reply briefs.   The court determines that, based on the record currently before it, this case is not impermissibly "vexatious" or "reactive in nature."

Second, the court finds that Defendants' arguments that Plaintiff is impermissibly forum-shopping, based primarily on the presence of one of her attorneys and a former attorney in the State Case (that is, Mr. Dawson), are off the mark.   According to the State Case, Plaintiffs' current attorney (Jim Pino), Mr. Dawson's active involvement in the State Case ceased mid-2012.   (Doc. # 26-3 at ¶ 3).   But, in any event, is irrelevant that Mr. Dawson may have represented the State Case Plaintiffs when the injunctive class was certified.   And, the court finds Defendants' argument that the State Case Plaintiffs could have moved the Shelby County Circuit Court to restart discovery or certify a putative damages class before this case was filed unpersuasive.   That court ordered that the State Case "shall be reset upon motion of *either* party." (Doc. # 11-1) (emphasis added).   Even if the State Case Plaintiffs did not move to reset the State Case before Plaintiff filed her Complaint in this case, and even if they did not move to certify a putative damages class, that does not render the filing of a complaint by Plaintiff (an entirely

separate individual) involving federal law claims in federal court "forum shopping plain and simple." (Doc. # 31 at p. 9).

The court finds this factor to be neutral.

### 3. The Factors Weigh against Abstention

After careful consideration of the factors described above, the court finds that, although the State Case is parallel for *Colorado River* Doctrine purposes, none of the factors compel abstention. "If anything, most [of the non-neutral factors] tip in the opposite direction." *Jackson-Platts*, 727 F.3d at 1143. In light of the court's duty to exercise the jurisdiction bestowed upon it, and under the circumstances of this case, the court concludes that it will not abstain under *Colorado River*.

### B. The First-Filed Rule Does Not Mandate Dismissal

Defendants argue that, in the alternative, the court should dismiss this case under the first-filed rule. The court disagrees.

The first-filed rule typically applies to two actions involving overlapping issues and parties that are pending in two federal courts. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). In this case, Defendants lean heavily on *Merrill Lynch, Pierce, Fenner & Smith v. Haydu*, 675 F.2d 1169 (11th Cir. 1982), "which relied on principles of federalism, comity and practically to affirm the dismissal of a federal action where there was a parallel state action." [13] *Pigott v. Sanibel Dev., LLC*, 508 F. Supp. 2d 1028, 1034 (S.D. Ala. 2007). In *Haydu*, the Eleventh Circuit explained that "[p]rinciples of comity come into play when separate courts are presented with the *same* lawsuit," and that in those circumstances "one court must yield its jurisdiction to the other." *Haydu*, 675 F.2d at 1173 (emphasis added). The court

---

[13] Defendants have not cited any cases from the Eleventh Circuit that have relied on *Haydu* to dismiss a federal action in favor of a preceding state action, and the court has not found any.

articulated the following guidelines: (a) "a court having jurisdiction over all matters in dispute should have jurisdiction of the case" to avoid fragmenting the dispute for resolution in two different fora; and (b) "[i]n absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case."

*Pigott*, 508 F. Supp. 2d at 1034 (quoting *Haydu*, 675 F.2d at 1173-74).  Further, a federal court should "'tread lightly' when a state proceeding is already underway. . . . Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Haydu*, 675 F.2d at 1173.

To be sure, on its face, *Haydu* appears to support Defendants' argument.  However, this court agrees with other courts in the Eleventh Circuit, and finds that

there is an obvious tension between these principles urging federal courts to step aside when the same issues are pending in a previously filed state-court lawsuit, as discussed in *Haydu*, and those embraced in the *Ambrosia Coal* line of cases, which command district courts to exercise their jurisdiction, notwithstanding duplicative state-court litigation, in the absence of exceptional circumstances.

*Pigott*, 508 F. Supp. 2d at 1034.   Indeed,

While *Haydu* invoked comity and federalism concerns in abstaining from a first-filed state action, the Eleventh Circuit has subsequently found that "as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."

*Sini*, 990 F. Supp. 2d at 1375 (quoting *Ambrosia Coal*, 368 F.3d at 1328) (quoting in turn *Colorado River*, 424 U.S. at 817).  "Whatever vitality *Haydu*'s comity and practicality language may continue to have in other contexts, however, the [c]ourt finds that the abstention issues presented in this action are governed by the *Colorado River* analysis. . ., which militates overwhelmingly against abstention."[14]  *Pigott*, 508 F. Supp. 2d at 1034.  Accordingly, the court determines abstention under the first-filed rule is inappropriate in this case.

---

[14] To be clear, the court recognizes that *Haydu* has not been overruled and is still good law.  But the facts of this case are distinguishable from *Haydu*.  The *Haydu* decision involved two different proceedings concerning the

## VI.    Conclusion

For all these reasons, Defendant's Motions (Docs. # 11, 13, 14) are due to be denied.  A separate order will be entered.

**DONE** and **ORDERED** this August 26, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

*exact* same parties and the essentially the exact same issues.  *Haydu*, 675 F.2d at 1171-72. The first-filed state court case had been removed to federal court, and the federal court remanded it.  *Id.*  Merrill Lynch then filed a second action in federal court which involved very similar same matters.  *Id.*  "[T]here years of litigation in the two courts had accomplished nothing more than conflicting orders about whether the case should be tried or arbitrated."  *Parsons v. Whittemore, Enters. Corp. v. Cello Energy, LLC*, No. 07-cv-743, 2008 WL 227952, at *20 (S.D. Ala. Jan. 25, 2008) (citing *Haydu*, 675 F.2d at 1174).  The Eleventh Circuit determined that "[t]here are no reasons compelling the federal court, last into this case, which remanded after removal proceedings, to decide the case.  The facts compel an opposite result."  *Haydu*, 675 F.2d at 1174.  "Although comity is clearly a discretionary judicial concept, the concerns embodied therein and the equities asserted here compel a state court resolution of this matter." *Id.*  To the contrary, here, a similar fact pattern is not present, and, in any event, Plaintiff's claims are not all being fairly represented in the State Case.  The court cannot determine that the "facts compel an opposite result," and that the court should abstain under *Haydu*. *Id.*    Instead, the court has more appropriately followed the *Colorado River* Doctrine and found that abstention is inappropriate.  Finally, it is unclear whether *Haydu* would apply to cases considered "parallel" under *Colorado River*, or whether must actually involve the same parties and issues.