**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **DANA CARDEN,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **Case No.: 2:15-cv-01381-RDP** |
| } | |
| **TOWN OF HARPERSVILLE, et al.,** } | |
| } | |
| **Defendants.** } | |

**MEMORANDUM OPINION**

This case is before the court on the Motions to Dismiss Plaintiff's First Amended and Restated Complaint[1] (Docs. # 47-49), filed by Defendants Judicial Correction Services, Inc. ("JCS"), Correctional Healthcare Companies, Inc. ("Correctional Healthcare"), CHC Companies, Inc. ("CHC Companies"), and the Town of Harpersville ("Harpersville"). This case is also before the court on Defendant Harpersville's Motion to Strike Class Allegations Based on *Griffin* and *Ewing*. (Doc. # 89). The motions have been fully briefed and are under submission. (*See* Docs. # 59-61, 64-66, 100, 102).

This suit is a putative class action challenging conduct related to probation sentences issued by the Town of Harpersville's Municipal Court ("Municipal Court"). It is similar to several putative class action suits that have been brought against JCS, corporate entities related to JCS, and municipalities that contracted with JCS for probation supervision services. The court has ruled on numerous motions to dismiss raising arguments similar to those presented in these motions. Having said that, the motions before the court are unique in two respects. First,

---

[1] The operative complaint will be referred to as the "First Amended Complaint" throughout the rest of this Memorandum Opinion.

Plaintiff has brought claims against Defendants under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and Defendants seek to dismiss those claims. Second, Plaintiff filed this suit after a similar state court putative class action had been pending for over five years; this related class action suit affects the statute of limitations analysis. After careful review, and for the reasons explained below, the court concludes that: (1) JCS and Correctional Healthcare's Motion to Dismiss is due to be granted in part and denied in part; (2) CHC Companies's Motion to Dismiss is due to be granted; (3) Harpersville's Motion to Dismiss is due to be granted in part and denied in part; and (4) Harpersville's Motion to Strike Class Allegations is due to be granted.

## I.      Background

The court begins its factual discussion with a review of the related court actions that preceded this suit. Then, the court discusses the allegations of the First Amended Complaint.

### A.      Procedural Background

On March 3, 2010, a group of plaintiffs sued Harpersville and JCS in the Circuit Court of Shelby County, Alabama for conduct occurring in the Municipal Court. (Doc. # 6 at ¶ 21). Although the original complaint in that state court action, *Richard Garrett, et al. v. Town of Harpersville, Alabama, et al.*, Case Number CV-2010-900183 (Cir. Ct. Shelby Cty., Ala.) was not filed with the court, the court has reviewed that document because it is a public record referenced in the Amended Complaint. The original *Garrett* complaint sought declaratory and injunctive relief on behalf of a class. (*See Garrett v. Town of Harpersville*, Case No. CV-2010-900183, Doc. # 2 at ¶ 10 (Cir. Ct. Shelby Cty., Ala., Mar. 3, 2010)). The proposed class included all persons incarcerated by JCS and Harpersville "in whole or in part for failure to pay fines and/or court costs, . . . where [JCS and Harpersville] made no determination as to such

persons' financial ability to pay fines and/or court costs." (*Id.* at ¶ 11). Among other claims, the initial *Garrett* complaint alleged that JCS and Harpersville violated 42 U.S.C. § 1983 by violating the plaintiffs' Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. (*Id.* at ¶¶ 56-58).

On July 17, 2012, the plaintiffs in the *Garrett* action filed a third amended complaint asserting class claims. (Doc. # 6 at ¶ 23). That class complaint sought declaratory, injunctive, and monetary relief on behalf of multiple classes. (*See* Doc. # 11-2 at ¶¶ 7-10). The proposed classes in the third amended *Garrett* complaint included (1) all individuals incarcerated by JCS and Harpersville for failure to pay fines and/or court costs without any determination of indigency, (2) all individuals charged jail fees by JCS and Harpersville for each day of incarceration, and (3) all individuals charged a monthly fee of $45 per month by JCS. (*Id.* at ¶¶ 7-9). Among other claims, the third amended complaint in *Garrett* alleged that JCS and Harpersville violated 42 U.S.C. § 1983 by violating the plaintiffs' Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. (*See id.* at ¶¶ 64-70).

On August 14, 2015, Plaintiff Dana Carden filed this putative class action on behalf of two classes of individuals who appeared before the Municipal Court. (Doc. # 1 at 1 & ¶ 6). Plaintiff sought to sue on behalf of individuals assigned to probation with Defendant JCS by the Municipal Court and individuals "incarcerated without consideration of their indigency" by the Municipal Court. (*Id.* at ¶ 6). Plaintiff filed her First Amended Complaint in September 2015 on behalf of the same proposed classes. (Doc. # 6 at 1 & ¶ 6). The First Amended Complaint discussed the existence of a similar suit against Defendants Harpersville and JCS in the Circuit Court of Shelby County, Alabama. (*Id.* at ¶ 21).

Defendants initially sought to stay or dismiss this case under the *Colorado River* doctrine. (Docs. # 11, 14). Defendant Harpersville argued that this putative class action duplicated the putative class action in *Garrett*. (Doc. # 11 at 3). The court denied Defendants' motions to abstain from considering this case under the *Colorado River* doctrine finding that the relevant factors weighed against abstention. (*See* Doc. # 43 at 19-26). Furthermore, it concluded that abstention was not mandated under the first-filed rule. (*Id.* at 26-27). In September 2016, Defendants filed the current motions to dismiss. (Docs. # 47-49).

**B.      Relevant Allegations in the First Amended Complaint**

The court reviews the "facts" of this case by examining the well-pleaded facts alleged in the First Amended Complaint. Plaintiff alleges that she received the following citations from a Harpersville police officer in 2007: speeding, driving without insurance, and driving without a license. (Doc. # 6 at ¶ 63). Plaintiff recounts that she did not receive a court date for that ticket. (*Id.* at ¶¶ 64-66). In May 2010, officers in Sylacauga, Alabama arrested her for outstanding warrants from Harpersville. (*Id.* at ¶ 67). The warrants against Plaintiff charged her with failing to appear. (*Id.*). Plaintiff remained in jail for 19 days in May and June 2010 because she could not pay the $1,434 bond demanded by Harpersville.[2] (*Id.* at ¶¶ 69-70).

Plaintiff appeared before the Municipal Court on June 10, 2010. (*Id.* at ¶ 71). Judge Larry Ward presided over the Municipal Court. (*Id.* at ¶ 73). Plaintiff alleges she was shackled during her hearing at the Municipal Court (*id.* at ¶ 76), and was not represented by counsel. (*Id.* at ¶ 77). She explained that she could not pay the cash bond because she had been caring for a premature baby and could not obtain work. (*Id.* at ¶ 79). The Municipal Court sentenced her to probation -- to be supervised by JCS -- and required her to sign the probation papers to be

---

[2]   The First Amended Complaint often does not distinguish between Harpersville and the Harpersville Municipal Court. The question is whether the Municipal Court, rather than Harpersville, demanded the bond in the warrant.

released from jail. (*Id.* at ¶¶ 80, 82). According to Plaintiff, she was charged $967 for speeding, $628 for driving without a license, and $578 for driving without insurance. (*Id.* at ¶ 87). Plaintiff claims that these fines exceeded the statutory maximum for municipal-court fines because she was also charged for daily jail fees. (*Id.* at ¶ 88). Plaintiff alleges that Harpersville issued another arrest warrant against her when she was unable to pay the amounts JCS demanded her to pay. (*Id.* at ¶¶ 91-92).

The First Amended Complaint states that Harpersville's City Council dissolved the Municipal Court on August 8, 2012. (*Id.* at ¶ 98). All of its traffic cases were transferred to the District Court of Shelby County, Alabama. (*Id.*). On December 27, 2012, the District Court of Shelby County declared all active traffic cases from the Municipal Court to be paid in full. (*Id.* at ¶ 99). The District Court also recalled any warrant associated with a traffic case from the Municipal Court. (*Id.*). But, Plaintiff received no notice from Harpersville or JCS regarding the District Court's termination of traffic cases. (*Id.* at ¶ 101). She called the clerk's office at the District Court, but the District Court's clerk did not confirm that the warrant against her had been invalidated. (*Id.* at ¶ 102).

### C.    Claims in the First Amended Complaint

Plaintiff has filed suit on behalf of two classes. (*See id.* at ¶ 104). First, Plaintiff seeks to represent a class of "individuals who were assigned by the Harpersville Municipal Court to 'probation' with JCS for the collection of fines." (*Id.*). Second, Plaintiff seeks to represent a class of "individuals who, despite their indigency, were incarcerated without consideration of their indigency for failure to pay fines, charges[,] and fees from the Harpersville Municipal Court." (*Id.*).

Plaintiff presents five sets of § 1983 claims against Defendants. First, Plaintiff alleges that Defendant Harpersville violated her due process rights by agreeing to require the Municipal Court to include probation sentences and probation supervision fees in the orders entered by the Municipal Court, regardless of whether the Municipal Court imposed a jail sentence. (*See id.* at ¶¶ 123, 125). Plaintiff also claims that Defendant Harpersville violated her due process rights by failing to ensure that, before imprisoning her, the Municipal Court (1) considered her indigency, (2) gave her notice of all charges against her, (3) conducted a hearing on charges that might result in her imprisonment, and (4) provided her assistance from counsel. (*Id.* at ¶ 127). According to Plaintiff, the system created by Harpersville and JCS imposed fines and charged fees to indigent persons without considering their indigency. (*Id.* at ¶ 133). And, Harpersville personnel allegedly accepted JCS's recommendations to imprison probationers without conducting delinquency hearings. (*Id.* at ¶ 136). After probationers were incarcerated, Plaintiff alleges that Harpersville violated their due process rights by arbitrarily releasing some of them based solely on their ability to pay cash bonds. (*Id.* at ¶ 146). Plaintiff alleges similar due process violations by Defendant JCS, who she claims "conspired and acted in concert" with Harpersville. (*See id.* at ¶¶ 149-80). Specifically, Plaintiff charges that JCS's actions often caused court costs, fines, and fees to exceed the jurisdictional maximum of $500 and caused probation sentences to exceed the two year statutory maximum. (*Id.* at ¶ 172).

Second, Plaintiff alleges that Defendant Harpersville violated her Fourth Amendment rights by arresting and detaining probationers, including Plaintiff, who could not pay the fines imposed by the Municipal Court. (*Id.* at ¶¶ 183, 187). Plaintiff claims that Harpersville's police officers enforced the collection procedures used by JCS, allowing JCS to threaten probationers with arrest or probation revocation. (*Id.* at ¶ 188). And, Harpersville's employees purportedly

"cooperated with JCS to arrest and jail the Plaintiff and class members." (*Id.* at ¶ 189). With regard to Defendant JCS, Plaintiff alleges that it "instituted the issuance of arrest warrants" when it knew that the probationers it proceeded against were unable to pay the amounts owed and that many probationers had no jail time assessed against them by the Municipal Court. (*Id.* at ¶ 199). Moreover, Plaintiff claims that JCS sought to either revoke probation sentences or instituted charges against probationers for "failure to obey court order" unless the probationers promptly paid JCS. (*Id.* at ¶ 200).

Third, Plaintiff asserts that Harpersville and JCS violated her Sixth Amendment right to counsel. (*See id.* at ¶¶ 203-40). Plaintiff alleges that she was arrested and jailed for 19 days due to tickets that had been issued to her several years earlier. (*Id.* at ¶¶ 206-08). The Municipal Court directed her to pay a fine, but placed her on probation when she was unable to pay the fine immediately. (*Id.* at ¶ 210). Plaintiff claims that JCS  threatened to jail probationers and actually incarcerated probationers -- with the assistance of Harpersville employees -- "if the fines, fees[,] and costs were not paid as demanded." (*Id.* at ¶ 216). According to Plaintiff, JCS routinely initiated charges against probationers for probation violations, failures to appear, or failures to obey court orders. (*Id.* at ¶ 218). Even though Plaintiff and other probationers faced jail sentences at that point, "neither JCS nor Harpersville routinely provided counsel for these 'offenders.'" (*Id.* at ¶ 219). Plaintiff contends that Defendant Harpersville denied her the right to counsel when she was imprisoned for nineteen days "because she could not pay the $1,434 cash [bond] demanded for her release on traffic ticket charges." (*Id.* at ¶ 222). Moreover, she asserts that JCS instituted a system where "there was no finding or hearing on the issue of willfulness" to substantiate charges that probationers had willfully failed to pay the amounts owed to JCS and Harpersville. (*Id.* at ¶ 236).

Fourth, Plaintiff claims that Harpersville and JCS violated her Eighth Amendment rights to be free from excessive fines, excessive bail, and cruel and unusual punishment. (*Id.* at ¶¶ 241, 259). She alleges that the fines and fees imposed by the Municipal Court, including purportedly illegal probation fees imposed on behalf of JCS, exceeded the statutory maximum fine that could lawfully be imposed by the Municipal Court. (*Id.* at ¶¶ 244, 248, 250). Moreover, she contends that the periods of incarceration imposed for probationers' failures to pay exceeded the maximum imprisonment term authorized under Alabama law. (*Id.* at ¶¶ 245-46, 250). And, according to Plaintiff, JCS and Harpersville violated the Eighth Amendment by charging her jail fees of $15 per day of incarceration because "[t]he practice and policy of charging for jail time when a person has neither the ability nor opportunity to obtain release violates the Eighth Amendment prohibition against excessive fines and cruel and unusual punishment." (*Id.* at ¶¶ 251, 253).

Finally, Plaintiff claims that Harpersville and JCS violated her equal protection rights by disparately treating Municipal Court defendants on the basis of wealth. (*See id.* at ¶¶ 275-99). Plaintiff claims that poor people received disparate treatment in the adjudication of their traffic offenses because Municipal Court defendants who could fully pay fines and costs were not placed on JCS-supervised probation, whereas Municipal Court defendants who could not fully pay fines and costs were placed on JCS-supervised probation and required to pay court costs and jail fees if imprisoned. (*Id.* at ¶¶ 277-78). Plaintiff insists that no rational basis exists for the disparate treatment. (*Id.* at ¶ 281).

In addition to her § 1983 claims, Plaintiff has sued Defendants under RICO. (*See id.* at ¶¶ 321-417). Plaintiff alleges that JCS and Harpersville created an association-in-fact enterprise as "a result of [their] conspiratorial agreement to use the City Court's authority and police power

to extort money from the poor." (*Id.* at ¶¶ 321-22). She claims that JCS acted in concert with Harpersville and the Municipal Court by keeping separate records and failing to review the Municipal Court's original court records. (*Id.* at ¶ 324). Likewise, Plaintiff alleges Harpersville failed to check or audit its files. (*Id.* at ¶ 325). Plaintiff contends that Harpersville police officers participated in the extortion scheme by arresting people who were unable to pay amounts owed and seeking cash bonds for their release. (*Id.* at ¶ 327).

Plaintiff alleges that JCS and Harpersville furthered their enterprise by requesting the Alabama Department of Transportation to revoke licenses for non-payment of fines. (*Id.* at ¶ 331). Defendants also furthered the purported enterprise by threatening to jail probationers, illegally imposing extra fees for warrants, illegally charging probationers for jail time, and illegally "adding bogus 'probation violation' charges that had not and were not adjudicated." (*Id.* at ¶ 338). Plaintiff asserts that JCS and Harpersville engaged in a pattern of racketeering acts from June 2005 to the summer of 2012. (*Id.* at ¶¶ 361-67).

Plaintiff further claims that JCS and Harpersville conducted, participated in, and conspired to conduct a RICO enterprise by engaging in acts of extortion that violated the Hobbs Act, 18 U.S.C. § 1951, the Travel Act, 18 U.S.C. § 1952, and Alabama Code § 13A-8-13.[3] (*Id.* at ¶ 341). According to Plaintiff, JCS and Harpersville extorted the proposed class members by threatening them with incarceration, revocation of probation, and accusations of violating probation unless they agreed to pay the set-up fees and monthly fees charged by JCS. (*Id.* at ¶ 344). Plaintiff asserts that JCS and Harpersville violated the Hobbs Act because they extorted money from Plaintiff and the class members "under color of official right." (*Id.* at ¶ 351). This extortion affected interstate commerce because the proceeds were used in commerce. (*Id.* at ¶

---

[3] Plaintiff summarily alleges the elements of Alabama state-law extortion in her First Amended Complaint. (*See id.* at ¶ 354).

352).  Moreover, Plaintiff claims that JCS and Harpersville violated the Travel Act by using letters sent through the mail as a method for demanding payment, including petitions to revoke probation, failure to report letters, notices to show cause, and violation of probation letters.  (*Id.* at ¶¶ 356, 359).  Also, Plaintiff claims that JCS violated the Travel Act by conducting extortionate acts in Alabama through a corporate entity based outside of Alabama.  (*Id.* at ¶¶ 358-59).  Finally, Plaintiff alleges that Harpersville received debt financing at preferential rates due to the revenue it received from its enterprise with JCS.  (*Id.* at ¶ 360).

## II.    Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations.  *Id.* at 555, 557.  In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party.  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate

"more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all of the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

## III.    Analysis

After careful review, and for the following reasons, the court concludes that (1) Plaintiff's RICO claims are due to be dismissed, (2) Plaintiff's class allegations are due to be struck as untimely, (3) Plaintiff's § 1983 claims, with the exception of her due process and equal protection claims, are due to be dismissed for failure to state a claim, and (4) all claims against Defendant CHC Companies are due to be dismissed because the First Amended Complaint presents no plausible basis for holding CHC Companies liable for the conduct at issue.

**A.      RICO Claims**

Defendants JCS and Correctional Healthcare argue that Plaintiff's RICO claims fail in several respects. First, they argue that Plaintiff did not face most of the extortionate conduct allegedly committed by JCS or Harpersville. (Doc. # 47 at 30-31). Second, they contend that JCS's warnings to probationers were not wrongful threats because Defendants JCS and Harpersville had a lawful claim to the money JCS sought from probationers in the proposed class. (*Id.* at 31). Third, they argue that the damages alleged by Plaintiff are not actionable damages under RICO because JCS had a rightful claim to the fees paid by probationers. (*Id.* at 32-33). Fourth, they contend that JCS could not have committed extortion because it collected funds in a quasi-judicial capacity for Harpersville's municipal government. (*Id.* at 33-34).

Defendant Harpersville has advanced arguments specific to itself. The Town argues that Plaintiff's RICO claims fail for three reasons. First, it insists that a governmental entity cannot form the *mens rea* necessary for the underlying criminal act necessary to support a civil RICO claim. (Doc. # 49 at 30). Second, it argues that it is immune from punitive damages. (*Id.* at 31). Third, it asserts that the RICO claim under 18 U.S.C. § 1962(c) fails because Harpersville has been named as the RICO enterprise and a RICO defendant. (*Id.*).

Plaintiff responds that the RICO claims are not due to be dismissed because "the evaluation of the threats [alleged in the Amended Complaint] is a factual issue." (Doc. # 54 at 24). She insists that the fees charged by JCS cannot be considered "lawful" charges at this stage of the proceedings because she has alleged that the fees violated state law and federal constitutional law. (*Id.* at 25). And, she contends that JCS charged fees that were collected for its own benefit and not remitted to the state. (*Id.*). She claims that the Amended Complaint alleges Defendants' knowing participating in the scheme. (*Id.* at 26-27).

After careful review, the court concludes that Plaintiff's RICO claims fail to plausibly plead predicate acts of racketeering activity or any violation of § 1962. Therefore, the RICO claims are due to be dismissed in their entirety.[4]

### 1.    Applicable Law to RICO Claims

RICO provides a private cause of action for treble damages to persons injured in their business or property by reason of a violation of 18 U.S.C. § 1962. 18 U.S.C. § 1964(c). Section 1962 of Title 18 provides four types of criminal RICO violations. Section 1962(c) prohibits an individual from "participating in the conduct of the affairs of an enterprise engaged in interstate commerce, through a pattern of racketeering activity." *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017). Section 1962(a) "prohibits investing income gained from a pattern of racketeering activity into such an enterprise." *Id.* Section 1962(b) "makes it unlawful to invest income derived from a pattern of racketeering activity in an enterprise." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2097 (2016). "Finally, § 1962(d) makes it unlawful to conspire to violate any of the other three prohibitions." *Id.*

A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(5). Under RICO, "racketeering activity" includes such predicate acts as extortion under state law and the Hobbs Act. *See* 18 U.S.C. § 1961(1). "A pattern is

---

[4] The court need not (and does not) decide whether Defendant Harpersville is an inappropriate RICO defendant due to its inability to form a criminal *mens rea*. (*See* Doc. # 49 at 30-31). The court understands that other district courts in the Eleventh Circuit have agreed with this position. *See Pine Ridge Recycling, Inc. v. Butts Cty., Ga.*, 855 F. Supp. 1264, 1273-74 (M.D. Ga. 1994); *Biondolillo v. City of Sunrise*, 736 F. Supp. 258, 261 (S.D. Fla. 1990). But, the court has found no opinion from the Eleventh Circuit dismissing a municipal RICO defendant for inability to form criminal *mens rea*. Nor does the court decide whether the RICO claims against Harpersville are due to be dismissed on the basis of municipal immunity because RICO provides for treble damages. (*See* Doc. # 49 at 31). Although the *Biondolillo* opinion applied municipal immunity to RICO claims, the court has found no binding authority from the Eleventh Circuit applying municipal immunity to RICO claims. *See Biondolillo*, 736 F. Supp. at 261. But, again, the court need not wade into that analysis because, here, the RICO claims clearly fail to state a claim for relief.

established by at least two acts of racketeering activity the last which occurred within ten years . . . after the commission of a prior act of racketeering activity." *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013) (quoting *McCaleb v. A.O. Smith Corp.*, 200 F.3d 747, 750 (11th Cir. 2000) (ellipsis in original)). These predicate acts must be related to one another and demonstrate criminal conduct of a continuing nature. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004).

A civil plaintiff must also show an injury to her business or property that occurred "by reason of" a substantive RICO violation. *Id.* (quoting *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282-83 (11th Cir. 2006)). That is, a RICO plaintiff must demonstrate injuries that were proximately caused by a violation of that statute. *Bivens Gardens Office Building, Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 906 (11th Cir. 1998). To prove proximate causation between a RICO violation and a subsequent injury, a plaintiff must present "some direct relation" between the alleged injurious conduct and the alleged injury. *Williams*, 465 F.3d at 1288.

 "The Supreme Court has made it crystal clear that the racketeering enterprise and the defendant must be two separate entities." *Ray*, 836 F.3d at 1355. For example, a corporation and its officers, employees, or agents cannot constitute a RICO enterprise when the agents and employees are alleged to have acted within the scope of their responsibilities for the corporation. *Id.* at 1356-57.

### 2. As a Matter of Law, Plaintiff Has Not Sufficiently Pled Predicate Acts of Hobbs Act or Travel Act Extortion

Plaintiff's civil RICO claims against Defendants are based on predicate acts of extortion. (*See* Doc. # 6 at ¶¶ 341-60). Although Plaintiff alleges that Defendants committed extortion under Alabama state law, she offers no more than a conclusory allegation of state-law extortion in her First Amended Complaint. (*See id.* at ¶ 354). To survive the motions to dismiss directed

at her RICO claims, Plaintiff must adequately plead (*i.e.*, in accordance with *Twombly* and *Iqbal*) a violation of the federal anti-extortion laws. Her attempts to do so fall woefully short.

"In order to make out a civil RICO claim under the Hobbs Act, the plaintiff must allege that a defendant obstructed, delayed, or affected commerce (or attempted to do so), by robbery or extortion." *Frank v. Lake Worth Utilities*, 464 F. App'x 802, 804 (11th Cir. 2012). Extortion is defined in the Hobbs Act as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). A defendant's action is "wrongful" if the defendant uses "a wrongful means to achieve a wrongful objective." *United States v. Pendergraft*, 297 F.3d 1198, 1205 (11th Cir. 2002) (citing *United States v. Enmons*, 410 U.S. 396, 399-400 (1973)).

A defendant threatening another for money seeks a wrongful objective if the defendant lacks a "lawful claim" to the money. *Id.* Moreover, threats to institute litigation are not instances of wrongful conduct actionable under the Hobbs Act. *Id.* at 1206-08. This is because parties are encouraged to go to courts to redress wrongs and enforce rights. *Id.* at 1206. Thus, even though the plaintiffs in *Pendergraph* supported their threat to sue with false affidavits, their conduct did not constitute extortion for purposes of RICO. *See id.* at 1205.

Here, Plaintiff's RICO claims fail from the start because Plaintiff has failed to plead that JCS or Harpersville committed wrongful conduct indictable under the Hobbs Act. The court is convinced by a recent analysis of similar civil RICO claims against JCS and a municipality premised on extortion.

> In *Pendergraft* the Court held that threatening to sue, even when supported by false affidavits, does not constitute wrongful extortion. *Id.* at 1205. While the holding was admittedly distinct, focusing on threatened litigation, the Court's analysis demanded there be a "wrongful objective" and a "wrongful means" to find extortion. *Id.* at 1205-06. Here, JCS was permitted to collect money and those who did not make required payments could indeed be arrested. *See* Ala.

Code 12-14-13(d)(7), 12-14-113(i) (allowing a judge to order payments of costs and fines and allowing defendants to be arrested for failing to meet conditions of parole).

Ultimately, what is at issue in this case appears to be a great number of issues surrounding an otherwise legal regime. That is, plaintiffs' allegations that they were not informed of their rights, that JCS had a duty to investigate, that plaintiffs were ultimately jailed solely for their inability to pay and sat out their debt at specified rates, and that this series of policies had a disparate impact on minority communities. JCS's alleged failure to fulfill their contract, or even their coordination with City officials as part of a broader scheme to increase municipal revenue, does not amount to extortion however, as neither the objective nor means were inherently wrongful—collecting fees and costs from defendants on parole and notifying such defendants a warrant may be issued if they do not comply is both commonplace and does not appear to be challenged.

*McCullough v. City of Montgomery*, 2017 WL 956362, at *14 (M.D. Ala. Mar. 10, 2017). The court agrees with and adopts this analysis. Plaintiff's Amended Complaint fails to demonstrate that JCS's threats constituted indictable extortion under the Hobbs Act.[5]

Likewise, Plaintiff has failed to plead that JCS or Harpersville committed racketeering activity by violating the Travel Act. A defendant violates the Travel Act if he travels "in interstate commerce with the intent to promote unlawful activity and thereafter actually [does] promote or attempt to promote the unlawful activity." *United States v. Kramer*, 73 F.3d 1067, 1071 (11th Cir. 1996). First, Plaintiff has not alleged that any specific employee or agent of JCS or Harpersville travelled across state lines with the intent of promoting unlawful activity. (*See* Doc. # 6 at ¶¶ 355-60). Second, Plaintiff's Amended Complaint fails to allege that JCS or Harpersville used the mail to promote or facilitate an unlawful activity -- namely, extortion -- because the demands for payment in the letters sent by JCS sought fees imposed by Municipal Court orders. (*See* Doc. # 6 at ¶ 355-56). Because the letters sought payments for which JCS had a lawful claim (based upon orders of the Municipal Court), the letters did not seek to extort

---

[5] Plaintiff's allegation that Defendants committed predicate acts of indictable state-law extortion is wholly conclusory and fails to state the predicate act element of her RICO claims. (*See* Doc. # 6 at ¶ 354).

money from probationers under JCS supervision, and a Travel Act violation cannot be premised upon them.

### 3. Alternatively, Plaintiff Has Not Adequately Pled a Civil RICO Claim Based on a Violation of § 1962(a)

The parties have not extensively briefed the merits of Plaintiffs' civil RICO claim based on violations of § 1962(a) in Count 13 of the Amended Complaint. Defendant Harpersville contests the claim on the ground that Plaintiff has failed to plead reinvestment of racketeering income. (Doc. # 49 at 31-32). Plaintiff responds that a § 1962(a) civil RICO claim is viable where the racketeering income benefited a defendant. (Doc. # 61 at 29-30). The court is not convinced by Plaintiffs' argument.

While the Eleventh Circuit has not extensively discussed the area of § 1962(a) RICO claims, it is clear that "the essence of a violation of § 1962(a) is not commission of predicate acts but investment of racketeering income." *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 446 (E.D.N.Y. 2007) (quoting *Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir. 1990)). *See also Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1369 (M.D. Fla. 2005) (collecting cases in support of the holding "that a claimant under § 1962(a) must plead an injury which stems 'not from the racketeering predicate acts themselves' but from the 'use or investment of racketeering income'"). Thus, the use or investment of racketeering income must proximately cause harm to the RICO victim. *See Lockheed Martin*, 357 F. Supp. 2d at 1369. *See also Nolen v. Nucentrix Broadband Networks, Inc.*, 293 F.3d 926, 929 (5th Cir. 2002) (stating that "any injury must flow from the *use or investment of racketeering income*" (emphasis in original) (quotation omitted)); *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 584 (5th Cir. 1992) (holding that there must be a nexus between the claimed violation and the injury).

Here, Plaintiff has averred that the class members suffered injuries from the investment of racketeering income because (1) they had to travel to JCS's office to pay fees, (2) they faced onerous reporting requirements if they failed to pay JCS, (3) they feared renewing their licenses or obtaining new identification documents because of outstanding warrants, and (4) some class members were wrongfully imprisoned for unjust charges. (Doc. # 6 at ¶¶ 376-78). Plaintiff's Amended Complaint does not specify, though, how the use or investment of racketeering income -- as opposed to the operation of the alleged racketeering enterprise -- proximately caused these injuries. "[I]t is the use or investment of racketeering income, not racketeering acts, which violates § 1962(a)." *Lockheed Martin*, 357 F. Supp. 2d at 1370. Plaintiff has not described how the use or investment of racketeering income derived from the alleged extortionate acts caused her or the putative class members to suffer the harms alleged in Paragraphs 376, 377, and 378 of the Amended Complaint.

Plaintiff avers that she has suffered an investment injury because JCS's extortionate conduct allowed it to undercut other probation servicers that would not have violated her constitutional rights. (Doc. # 6 at ¶ 380). The court has found no Eleventh Circuit precedent addressing whether a plaintiff may maintain a § 1962(a) claim based on harms caused by a RICO defendant undercutting other entities. The court has found precedent from the Ninth Circuit, though, that rejects this theory of relief under § 1962(a). In *Sybersounds Records, Inc. v. UAV, Corp.*, 517 F.3d 1137 (9th Cir. 2008), the plaintiff asserted that it suffered an "investment injury" from the defendants' criminal copyright infringement because the defendants used the proceeds from their sales of infringing products to undercut the plaintiff's prices. *Id.* at 1149. The Ninth Circuit held that the plaintiff's allegations failed to present an "investment injury" because its prices had been undercut due to the infringement and mail fraud itself, rather than by the

reinvestment of racketeering proceeds. *Id.* at 1149-50. Likewise, the harms Plaintiff allegedly suffered from the racketeering enterprise were caused by activities of the enterprise's members, rather than investment of the racketeering proceeds. And, to the extent that JCS reinvested some portion of the fees it collected into its business operations, its reinvestment does not provide a basis for a § 1962(a) RICO claim. *See Brittingham v. Mobil Corp.*, 943 F.2d 297, 305 (3d Cir. 1991) (finding that plaintiffs failed to present a causal connection between defendants' investments and the ultimate harm because "normal reinvestment of corporate profits" is insufficient to support a § 1962(a) violation). Ultimately, the court is not convinced from the averments in the Amended Complaint that JCS harmed Plaintiff or the putative class members through the investments described in the Amended Complaint.

Plaintiff claims that they suffered an "investment injury" imposed by Harpersville because Harpersville was able to obtain a more favorable bond rating. (Doc. # 6 at ¶ 381). This § 1962(a) theory suffers from at least one fatal flaw; Plaintiff has not explained how Harpersville's favorable bond rating caused the injuries they suffered. Although it might well be plausible that the alleged harms to Plaintiff and a more favorable bond rating were both results of the alleged extortion scheme presented in the RICO counts, it is not plausible that the more favorable bond rating caused the harms Plaintiff and the putative class members allegedly suffered. And, Plaintiff has offered no authority to support a RICO claim for such an "investment injury." As such, Plaintiff has presented no injury she suffered directly from the reinvestment of the proceeds by Harpersville, and her § 1962(a) civil RICO claim is due to be dismissed.

### 4. Alternatively, Plaintiff Has Not Adequately Pled a Civil RICO Claim Based on a Violation of § 1962(b)

The parties have not extensively briefed the § 1962(b) RICO claim stated in Count 13 of the Amended Complaint. Nevertheless, because Defendant Harpersville challenged the claim in

its motion to dismiss (*see* Doc. # 49 at 32), the court has reviewed it and finds that it fails to state a claim for relief.

Section 1962(b) provides that "[i]t shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). "A violation of § 1962(b) requires that the RICO defendant acquire or maintain an interest in, or control of, an enterprise *through* (or by way of) the pattern of racketeering activity." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Assn.*, 176 F.3d 315, 328 (6th Cir. 1999) (citing *Compagnie De Reassurance D'Ile France v. New England Reins. Corp.*, 57 F.3d 56, 91–92 (1st Cir. 1995), *cert. denied*, 516 U.S. 1009 (1995); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1189–90 (3d Cir. 1993); *Danielsen v. Burnside-Ott Aviation Training Ctr.*, 941 F.2d 1220, 1230–31 (D.C. Cir. 1991)) (emphasis in original); *accord Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 276 F. Supp. 2d 1276, 1288 (S.D. Ga. 2003) (citation omitted) (same). Stated otherwise, "§ 1962(b) prohibits a person engaging in a pattern of racketeering for the purpose of acquiring or maintaining an interest in an enterprise." *Sadighi v. Daghighfekr*, 36 F. Supp. 2d 279, 291 (D. S.C. 1999).

Plaintiff has not indicated how Defendants maintained or acquired an interest in the alleged enterprise through any of the purported racketeering activities. Indeed, the enterprise alleged in the Amended Complaint is nothing more than the "ongoing business relationship" between JCS and Harpersville, which could not plausibly have been acquired or controlled through illicit racketeering activity of the parties to the relationship. (Doc. # 6 at ¶ 321). Plaintiff has alleged that JCS and Harpersville enriched themselves with the proceeds from the racketeering activity. (*Id.* at ¶ 387). But, in no way has Plaintiff claimed that JCS or

Harpersville used a pattern of racketeering activity to acquire, maintain, or control a separate entity, as is required for her to maintain a § 1962(b) RICO action. (*See id.* at ¶¶ 385-94). *See also Advocacy Org. for Patients & Providers*, 176 F.3d at 328. Because Plaintiff has presented no "specific nexus" between Defendants' alleged racketeering activity and Defendants' control of an "enterprise," her § 1962(b) RICO claim is due to be dismissed.

### 5.    Plaintiff Has Not Adequately Pled a § 1962(c) RICO Claim

Section 1962(c) states that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affair through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To establish a violation of § 1962(c), a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Jones v. Childers*, 18 F.3d 899, 910 (11th Cir. 1994) (quorting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). That being said, a plaintiff does not have to show that a defendant is comparable to an organized crime syndicate to succeed in a RICO action. *Ray*, 836 F.3d at 1348 (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 243 (1989)).

Plaintiff has claimed that JCS and Harpersville formed an association-in-fact through a conspiracy "to use the [Municipal Court's] authority and police power to extort money from the poor." (Doc. # 6 at ¶¶ 321-22). "[A]n association-in-fact enterprise must have three 'structural features': (1) a 'purpose,' (2) 'relationships among those associated with the enterprise,' and (3) 'longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1067 (11th Cir. 2017) (quoting *Boyle v. United States*, 556 U.S. 938, 944, 946 (2009)). An association-in-fact enterprise "can exist in the absence of a

formally structured group." *Lockheed Martin*, 357 F. Supp. 2d at 1360 (quoting *United States v. Young*, 906 F.2d 615, 619 (11th Cir. 1990)).

However, not all associations-in-fact are RICO enterprises. Instead, "[t]he critical determination in evaluating whether 'an association of individual entities' constitutes 'a RICO enterprise' is whether 'the association of individual entities, however loose or informal, furnished a vehicle for the commission of two or more predicate crimes.'" *Id.* (quoting *United States v. Goldin Indus., Inc.*, 219 F.3d 1271, 1275 (11th Cir. 2000) ("*Goldin II*") (internal changes omitted)). An association-in-fact "lacks the structure needed to be legally cognizable" if it "does not have sufficient relationships among Defendants as associates." *Almanza*, 851 F.3d at 1067-68. "[T]he group must function as a continuing unit," but it does not have to include such formal structural elements as a hierarchical structure, fixed roles, regular meetings, established rules or regulations, disciplinary procedures, or even a name. *Boyle v. United States*, 556 U.S. 938, 948 (2009). In *Almanza*, the Eleventh Circuit addressed an association-in-fact enterprise alleged based on parallel conduct from defendants and held that "parallel conduct alone cannot support a plausible inference of an agreement." 851 F.3d at 1068.

As in *Almanza*, the court finds that the First Amended Complaint does not plead plausible relationships between JCS and Harpersville to support the existence of an association-in-fact enterprise. To be sure, Plaintiff has pled that Harpersville and JCS entered into a contract whereby JCS agreed to provide probation supervision fees in exchange for fees that would be paid by probationers, rather than by Harpersville or the Municipal Court. (Doc. # 6 at ¶ 329). Other than that contract, though, Plaintiff's alleged association-in-fact enterprise relies on independent conduct committed by JCS employees and Harpersville employees to support the existence of an association (along with a conclusory allegation of a conspiratorial agreement to

commit extortion). (*See id.* at ¶¶ 322-28, 330-31). These allegations of independent conduct simply do not show that JCS and Harpersville acted together as a continuing unit and do not plausibly show an agreement to conduct extortion through a joint association-in-fact enterprise. *Cf. Almanza*, 851 F.3d at 1068. Because Plaintiff has failed to plausibly plead the second structural element necessary for an association-in-fact enterprise, her § 1962(c) claim is due to be dismissed.[6] *Id.* at 1067.

### 6.    Plaintiff Has Not Adequately Pled a Violation of § 1962(d)

Section 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). Plaintiff cannot maintain a § 1962(d) claim because he has not made a distinct allegation of an agreement to violate a substantive provision of RICO from the agreement described in the § 1962(c) count. (*See* Doc. # 6 at ¶¶ 410-17). When a plaintiff fails to state a substantive RICO claim "and the conspiracy count does not contain additional allegations, the conspiracy claim necessarily fails." *Rogers v. Nacchio*, 241 F. App'x 602, 609 (11th Cir. 2007) (citing *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1269 (11th Cir. 2004)). Therefore, Plaintiff's § 1962(d) is also due to be dismissed for failure to state a claim.

### B.    Timeliness of Plaintiff's Individual Claims and Class Action Claims

In their filings, Defendants JCS and Correctional Healthcare reiterate the statute of limitations defense they have presented in other putative class actions brought by probationers in other municipal courts. (Doc. # 47 at 36-38). In addition, Defendant Harpersville asks the court to strike the class action allegations in the First Amended Complaint because there is no

---

[6] Although formal structural elements are unnecessary to create an association-in-fact enterprise, the court notes that Plaintiff has not buttressed her allegation of an association-in-fact enterprise between JCS and Harpersville with any assertions that JCS and Harpersville created a hierarchical structure, divvied up roles between themselves, conducted regular meetings, or created rules for their alleged ongoing business relationship.

"piggyback" tolling of a class action suit during the pendency of another class action suit. (Doc. # 89 at 3). In response, Plaintiff concedes that the authority relied upon by Harpersville is binding on this court. (*See* Doc. # 100 at 3). But, she decries the "punitive rigidity" of that precedent and suggests that the Eleventh Circuit should "rethink its stance on piggybacking when given the opportunity to do so." (*Id.*). Obviously, any "rethinking" of precedent is the job of the Eleventh Circuit sitting *en banc*, not this court.

For purposes of limitations related to Section 1983 claims, federal courts borrow the most closely analogous state statute of limitations, which in Alabama is two years.[7] *Owens v. Okure*, 488 U.S. 235, 249-50 (1989) (holding that Section 1983 actions are governed by the residual or general personal injury statute of limitations in states with more than one statute of limitations); Ala. Code § 6-2-38(l) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."). But while state law supplies the statute of limitations, "when a Section 1983 action accrues is a question of federal law." *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987) (citing *Rubin v. O'Koren*, 621 F.2d 114, 116 (5th Cir. 1980)). Under federal law, such a claim does not accrue until "the plaintiff knows or has reason to know of the injury which is the basis of the action." *Corn v. City of Lauderdale Lakes*, 904 F.2d 585, 588 (11th Cir. 1990). Likewise, a federal action does not accrue until "the plaintiff is aware or should have been aware who has inflicted the injury." *Mullinax*, 817 F.2d at 716 (citing *Lavellee v. Listi*, 611 F.2d 1129, 1131 (5th Cir. 1980)).

It is well settled that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit

---

[7] The court need not address the timeliness of Plaintiff's RICO claims because, as explained above, Plaintiff has failed to state any claim for relief under RICO.

been permitted to continue as a class action." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974). *See also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350-52 (1983) (confirming that unnamed members of an unsuccessful class may file new individual actions). The Eleventh Circuit has held, though, that the *American Pipe* rule does not toll the statute of limitations for filing subsequent class action claims. *Griffin v. Singletary*, 17 F.3d 356, 357 (11th Cir. 1994) (holding that the pendency of a class action tolls the statute of limitations for individual claims by putative class members "but does not for those wishing to bring class action suits"). In 2015, the Eleventh Circuit confirmed that *Griffin*'s holding applies to later-filed class actions where the original class action was dismissed due to the inadequacy of a class representative "rather than a defect in the class itself." *Ewing Indus. Corp. v. Bob Wines Nursery, Inc.*, 795 F.3d 1324, 1325 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 1379 (2016). The *Ewing Industries* opinion discussed certain criticisms of *Griffin*'s holding, but affirmed that *Griffin* remains binding precedent in this circuit. *See id.* at 1328.

Plaintiff's suit rests on conduct committed by employees of JCS, the Municipal Court, and Harpersville pursuant to JCS's supervision of probationary sentences on behalf of the Municipal Court. The Amended Complaint reveals that JCS ceased supervising probationers for the Municipal Court on July 11, 2012, when the Circuit Court of Shelby County issued a preliminary injunction concerning the operations of the Municipal Court. (*See* Doc. # 6 at ¶¶ 26-29). Harpersville's City Council voted to dissolve the Municipal Court on August 8, 2012. (*Id.* at ¶ 30). On December 27, 2012, the District Court of Shelby County declared outstanding traffic cases from Harpersville to be paid in full. (*Id.* at ¶ 31). Moreover, the District Court ordered all warrants associated with those cases to be recalled and set aside. (*Id.*). Plaintiff filed this putative class action on August 14, 2015. (*See generally* Doc. # 1).

Here, Plaintiff's individual claims are not subject to dismissal on statute of limitations grounds. The court finds that Plaintiff was a member of at least one of the putative classes described in the third amended *Garrett* complaint, which was filed on July 17, 2012. (*See* Doc. # 11-2 at ¶ 8) (describing a class of people charged jail fees). That putative class action, which has raised § 1983 claims similar to those presented in this case, tolled the statute of limitations for Plaintiff's individual § 1983 claims. *Cf. Am. Pipe*, 414 U.S. at 554. To the extent that the actions giving rise to Plaintiff's claims occurred before July 17, 2010, the court concludes that the claims are not due to be dismissed because (1) a statute of limitations defense generally is not appropriately evaluated at the motion to dismiss stage, and (2) the court cannot say from Plaintiff's allegations that a reasonable plaintiff would have been aware of the parties responsible for the alleged tortious conduct. *See Mullinax*, 817 F.2d at 716; *Ray v. Judicial Corrections Services*, 2013 WL 5428395, at *10 (N.D. Ala. Sept. 26, 2013). For these reasons, Plaintiff's individual § 1983 claims are not due to be dismissed on statute of limitations grounds.

On the other hand, Plaintiff's class action claims are due to be struck as time-barred. Plaintiff's arrest and court hearing before the Municipal Court occurred in May and June 2010, respectively. (Doc. # 6 at ¶¶ 67, 71). The Municipal Court allegedly ordered Plaintiff to complete probation supervised by JCS and allegedly imposed fines in excess of the relevant statutory maximum in June 2010, more than five years before the filing of this suit. (*See id.* at ¶¶ 82-86). Although the court has applied the continuing violations doctrine to deny motions to dismiss in similar putative class action § 1983 suits, *see Ray*, 2013 WL 5428395, at *10-11, the allegations of Plaintiff's First Amended Complaint make clear that the doctrine is not applicable here because the outstanding traffic cases and arrest warrants connected to the alleged scheme were terminated by the District Court of Shelby County in December 2012, more than two and a

half years before the commencement of this action. (Doc. # 6 at ¶ 99). The court need not make a judicial guess as to when a reasonably diligent plaintiff would have discovered the facts constituting the alleged § 1983 violations because a group of plaintiffs -- the *Garrett* plaintiffs -- brought similar § 1983 claims against JCS and Harpersville in 2010. Even though the actions concerning Plaintiff did not occur until after the commencement of *Garrett*, a reasonably diligent plaintiff in Carden's position would have been aware of the constitutional injuries she suffered and the parties liable for those injuries, at the latest, by July 2012, when the *Garrett* plaintiffs filed their third amended complaint against Harpersville and JCS. *Cf. Kreek v. Wells Fargo & Co.*, 652 F. Supp. 2d 1053, 1060 (N.D. Cal. 2009) (concluding that a reasonably diligent plaintiff would have had inquiry notice of the facts supporting a claim when "similarly situated plaintiffs were able to file an identical action"). Because the *American Pipe* rule does not apply to class claims, and similarly situated plaintiffs to Carden filed a § 1983 class action suit more than 2 years prior to the commencement of this suit, Plaintiff's class action allegations are due to be struck from the Amended Complaint as untimely.

### C. Plaintiff's 42 U.S.C. § 1983 Claims

Defendants contest the plausibility of all § 1983 claims pled by Plaintiff. (*See* Docs. # 47 at 7-26; 49 at 6-11). The court first addresses whether Plaintiff has adequately pled *Monell* claims against JCS and Harpersville. The court then addresses the plausibility of each § 1983 claim below, in turn.

#### 1. Plausibility of Plaintiff's Municipal Policy and Custom Allegations

It is axiomatic that a municipality, such as the Town, is only liable under Section 1983 when a municipal employee or agent undertakes an action in "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be

said to represent official policy." *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 690. A plaintiff may establish the existence of a municipal "policy" by identifying "(1) an officially promulgated [municipal] policy or (2) an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policymaker." *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (*en banc*). When a private entity contracts to perform a traditional function exclusively within the state's prerogative, "it becomes the functional equivalent of [a] municipality." *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997).

Defendants JCS, Correctional Healthcare, and Harpersville all argue that Plaintiff has not identified a municipal policy or custom that was the moving force behind the alleged violations of her constitutional rights. (Docs. # 47 at 26-30; 49 at 12-14). In its motion to dismiss, Defendant Harpersville also argues that Plaintiff's § 1983 claims fail because she has not alleged a constitutional violation attributable to a municipal action. (Doc. # 49 at 12). It insists that it is not responsible for the conduct of the Municipal Court and cannot be liable for the conduct of the Municipal Court's judge, an official the town has no authority to control. (*Id.* at 13-17, 20-23). Although these arguments present some basis for questioning the plausibility of Plaintiff's § 1983 claims, they do not justify dismissing the claims at this time. But these arguments do demonstrate why Plaintiff must replead her allegations against the Town in more detail.

With regard to § 1983 claims against governmental entities, a plaintiff must illustrate that the governmental entity has "authority and responsibility over the governmental function in issue." *Id.* at 1330. "[L]ocal governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control." *Turquitt v. Jefferson Cty., Ala.*, 137 F.3d 1285, 1292 (11th Cir. 1998) (*en banc*). In analyzing whether a municipality had control

over a policymaker, the court must determine whether the municipality controlled the policymaker with regard to the "particular area or function" at issue. *Grech*, 335 F.3d at 1331-32.

Here, the court readily concludes that Plaintiff has plausibly pled policies or customs of JCS that were a moving force behind the constitutional violations at issue. Plaintiff has alleged that JCS utilized a "highly systemized and uniform" probation system. (*E.g.*, Doc. # 6 at ¶ 151). JCS's uniform probation system allegedly included form contracts to establish contractual relationships with municipalities and a training manual with form documents and instructions for probation supervision. (*Id.*). Plaintiff contends that the policy and practice instituted by JCS required probation to be ordered for municipal court defendants who could not immediately pay the amounts owed to a municipality, required additional fees to be added for JCS, and "imposed incarceration for a failure to pay fines, fees[,] and costs when payment was not forthcoming as JCS demanded." (*Id.* at ¶ 160). Like Harpersville, JCS and Correctional Healthcare argue that any of JCS's customs or policies could not have been the moving force behind the alleged constitutional violations because the Municipal Court was the entity responsible for any constitutional violation. (*See* Doc. # 47 at 28-30). Plaintiff's allegations belie this argument, though. Plaintiff has stated in the operative Complaint that the Municipal Court judge provided presigned court orders to JCS (*id.* at ¶ 53), the judge delegated to JCS the obligation to investigate indigency (*id.* at ¶ 138), and JCS's recommendations to imprison probationers were accepted without additional hearings (*id.* at ¶ 166). Accordingly, Plaintiff has sufficiently

alleged[8] that JCS acted *after* any intervening conduct by the Municipal Court and that its policies and customs were a moving force behind the purported violations of her constitutional rights.

The court is less certain whether any policy or custom of Harpersville was a moving force behind the constitutional violations at issue. In a recent summary judgment opinion, the undersigned explained that, as a matter of law, an Alabama municipality cannot be held liable under § 1983 for constitutional violations committed by an Alabama municipal court because a municipal court is an Alabama state agency and a municipal judge is an state policymaker. *See Ray v. Judicial Corrections Services*, 2017 WL 660842, at *12-14 (N.D. Ala. Feb. 17, 2017). Therefore, if a decision or order of the Municipal Court causes the constitutional violation, then Harpersville cannot be held liable under § 1983. *Turquitt*, 137 F.3d at 1292.

However, Plaintiff has avoided (perhaps intentionally and adroitly) any direct allegation that a Municipal Court act led to a violation of her constitutional rights by (1) referring to "Harpersville" in statements that appear to be reciting events that occurred before the Municipal Court, and (2) discussing conduct in vague and indirect language. For example, Plaintiff claims that "Harpersville added daily jail charges to her bill" and that her fines for her traffic offenses reflected the jail fees. (Doc. # 6 at ¶¶ 81, 87-88). Common sense may suggest that the Municipal Court added the jail fees to the fines for the traffic offenses when ordering the amount that Plaintiff had to pay for her citations. But, the court cannot say that for certain because "Harpersville," not the Municipal Court, is alleged to be the actor in the First Amended Complaint. Similarly, Plaintiff alleges in her due process claim that "JCS's recommendations to jail people . . . were then approved by administrative personnel at Harpersville without a hearing to determine indigency." (*Id.* at ¶ 166). Again, common sense suggests that the Municipal Court

---

[8] Again, these are Plaintiff's allegations. The Rule 56 evidence may (or may not) show that it was the Municipal Court which engaged in the conduct at issue. *See Ray v. Judicial Correction Services, Inc.*, 2017 WL 4012933 (N.D. Ala. Sept. 12, 2017). But as to that factual question, we are not there yet.

judge or a Municipal Court magistrate would be called upon to approve the recommendations to jail probationers. If so, then Harpersville cannot be held liable, and the § 1983 claim resting on this allegation is due to be dismissed. *See Ray*, 2017 WL 660842, at *12-14. But, the court cannot foreclose the possibility that Plaintiff is actually alleging that a Harpersville employee -- such as a police officer -- was approving the recommendations to jail probationers. If that is the case, then Harpersville had the authority to control that employee's actions.[9] But, if that is what is claimed, it must be sufficiently alleged.

The court will not resolve this problem by dismissing all § 1983 claims against Harpersville at this juncture. Nevertheless, if Plaintiff wishes to proceed against Harpersville with her plausibly-pled § 1983 theories, she must file a Second Amended Complaint specifying the individuals responsible for Harpersville's conduct that was a moving force behind her constitutional violations. Plaintiff must also specify when the Municipal Court committed conduct underlying her constitutional claims. Going forward, the court will not accept unspecific allegations that conduct occurred "[u]nder the policy and practice of JCS at Harpersville" without language alleging a responsible actor. If Plaintiff does not appropriately amend her complaint, the court will dismiss all remaining § 1983 claims against Harpersville in this suit. With that admonition in mind, Harpersville's motion to dismiss all of the § 1983 claims for insufficiently pled *Monell* claims is due to be denied at this time.

### 2. Due Process Claims

Defendants JCS and Correctional Healthcare argue that Plaintiff's due process claim fails because "she fails to allege what process was owed to her by JCS, the source of that right, and

___

[9] For another example, consider this. Plaintiff has alleged that "[u]nder the policy and practice of JCS at Harpersville, unpaid fines and costs were unlawfully converted to undetermined days in jail for which the 'offenders' have also been charged daily jail fees." (Doc. # 6 at ¶ 167). Plaintiff does not specify in any way how a sentence with no imprisonment term is "converted" into a sentence with an unspecified imprisonment term. Nor does she identify the actor(s) responsible for changing the sentence or charging jail fees.

how the process provided to her by JCS was constitutionally inadequate." (Doc. # 47 at 7). In response, Plaintiff explains that JCS and Harpersville created a joint policy or practice that required the Municipal Court to impose probation on Municipal Court defendants. (Doc. # 59 at 8). And, JCS's system allegedly disregarded the need for willfulness determinations before imprisoning probationers for failure to pay fines. (*Id.*). Plaintiff contends that the First Amended Complaint describes the unlawful delegation of responsibilities from the Municipal Court to JCS. (*Id.* at 9). The court agrees with Plaintiff that the due process claims are due to go forward.

"The Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation." *Black v. Romano*, 471 U.S. 606, 610 (1985). In *Bearden v. Georgia*, 461 U.S. 660 (1983), the Supreme Court established a substantive limit on when courts may revoke probation for a probationer's failure to pay fines or restitution. *Black*, 471 U.S. at 611. The *Bearden* opinion requires a court conducting a revocation hearing to ask a probationer why he or she failed to pay a fine or restitution ordered as a condition of probation. *Bearden*, 461 U.S. at 672. On the one hand, "[i]f the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority." *Id.* On the other hand, "[i]f the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment." *Id.*

At a minimum, Plaintiff has plausibly alleged (or will be given the chance to more specifically allege) that Defendants JCS and Harpersville violated her due process right to a revocation hearing to determine whether she had willfully failed to pay fines owed to the

Municipal Court. The Amended Complaint alleges that Harpersville unlawfully delegated functions of the Municipal Court to JCS through a contract. (*See* Doc. # 6 at ¶¶ 18-20). This contract required the Municipal Court to include fees payable to JCS in every court order. (*Id.* at ¶ 19). Plaintiff claims that the probation system initiated by JCS and Harpersville called for JCS to recommend the issuance of an arrest warrant whenever a petitioner failed to pay the amounts owed to JCS and Harpersville. (*Id.* at ¶¶ 139-40). And, in accordance with the probation system established by Defendants, the Municipal Court did not address whether a probationer had willfully failed to pay fines and fees owed before issuing an arrest warrant premised on nonpayment. (*See id.* at ¶¶ 141-44). Moreover, Defendants did not provide probationers with notice of the charges against them. (*Id.* at ¶¶ 144, 174). *See also Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973) (holding that a probationer "is entitled to notice of the alleged violations of probation or parole [and] an opportunity to appear and to present evidence in his own behalf," among other procedural protections, before probation is revoked). Plaintiff alleges that she was subjected to probation with JCS, she was indigent and unable to pay the amounts demanded by JCS, and she subsequently had an arrest warrant issued against her. (*Id.* at ¶¶ 80, 91-92). In light of the detailed description of the system allegedly implemented by JCS and Harpersville, and Plaintiff's allegations that a warrant was issued against her for nonpayment of fines and fees, the court concludes that she has plausibly pled that her due process rights were violated by Defendants JCS and Harpersville.[10] *See Bearden*, 461 U.S. at 672.

### 3. Fourth Amendment Claims

Defendants JCS and Correctional Healthcare argue that Plaintiff has not presented a plausible Fourth Amendment claim because she was arrested and incarcerated before she was

---

[10] Defendants JCS and Correctional Healthcare claim that Plaintiff has not alleged that she personally was arrested for nonpayment of fines and fees during probation. (Doc. # 47 at 13). The Amended Complaint plausibly indicates, though, that her probation was revoked when an arrest warrant was issued against her.

placed on probation, not after she was placed on probation. (Doc. # 47 at 14). Plaintiff responds that she was incarcerated for 19 days because she could not pay a cash bond demanded by Harpersville. (Doc. # 59 at 10). Moreover, she asserts that she "lives with the constant threat of being arrested illegally again" due to the arrest warrant the Municipal Court issued against her. (*Id.* at 11). On these claims, the court is persuaded by Defendants' argument.

"An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010). "In *Malley v. Briggs*, the Supreme Court established that even if a magistrate approves an arrest warrant, the officer who applied for the warrant may be liable for violating the Constitution if the evidence presented to the magistrate was insufficient to establish probable cause." *Carter v. Gore*, 557 F. App'x 904, 908 (11th Cir. 2014) (citing *Malley v. Briggs*, 475 U.S. 335, 345 (1986)). For example, an officer may be held liable for violating the Fourth Amendment if he or she proffers an affidavit for a warrant that lacks a basis for a belief that the suspect violated the law and an affirmative statement that the officer has personal knowledge of the circumstances of the alleged crime. *Id.* at 908-09 (discussing *Kelly v. Curtis*, 21 F.3d 1544, 1555 (11th Cir. 1994), and *Garmon v. Lumpkin Cty.*, 878 F.2d 1406, 1408-09 (11th Cir. 1989)). "To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). The elements for a malicious prosecution claim include: (1) "a criminal prosecution instituted or continued by the present defendant"; (2) "with malice and without probable cause"; (3) "that terminated in the plaintiff accused's favor"; and (4) "caused damage to the plaintiff accused." *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003).

In this case, Plaintiff has not plausibly alleged that she suffered the Fourth Amendment violation presented in Counts Three and Four of the First Amended Complaint. Stated succinctly, the First Amended Complaint charges Defendants with violating the Fourth Amendment by arresting and jailing probationers "for their inability to pay a simple fine with added fees and costs dictated by the Harpersville contract with JCS." (Doc. # 6 at ¶ 187). Plaintiff's Fourth Amendment claim thus relies on unlawful seizures committed after the Municipal Court sentenced its defendants to probation. (*See id.* at ¶¶ 188-89, 199-200). In contrast, Plaintiff's allegations about her own interactions with the Municipal Court show that she was arrested and incarcerated before the Municipal Court ordered her to complete JCS-supervised probation. (*See id.* at ¶¶ 67-71, 80). She has not alleged that she was arrested or incarcerated after her probation sentence commenced. (*See id.* at ¶¶ 87-92). Because Plaintiff was not arrested or incarcerated after the commencement of her probation, she has not plausibly pled that she personally faced the Fourth Amendment violation stated in Counts Three and Four, and Counts Three and Four are thus due to be dismissed.

In her response brief, Plaintiff appears to argue that Defendants violated her Fourth Amendment rights when they caused the arrest warrant described in Paragraph 92 of the Amended Complaint to be issued. (*See* Doc. # 59 at 9). But, this argument holds no water. The warrant described in Paragraph 92 cannot support a false arrest claim because Plaintiff has not alleged that she was arrested pursuant to the warrant. *See Brown*, 608 F.3d at 734. And, her allegations about the warrant do not support a malicious prosecution claim because Plaintiff has not asserted whether any criminal proceeding related to the arrest warrant described in Paragraph

92 was terminated in her favor.[11]  *Wood*, 323 F.3d at 882.  Plaintiff's Fourth Amendment claims are due to be dismissed.

### 4.        Sixth Amendment Claims

Defendants JCS and Correctional Healthcare argue that Plaintiff participated in no hearings after she was sentenced to probation for which she should have been appointed counsel. (Doc. # 47 at 17-18).  They claim that the First Amended Complaint does not identify which proceeding(s) required the assistance of counsel.  (*Id.* at 19).  In response, Plaintiff claims that JCS entered into a joint scheme with Harpersville to incarcerate individuals without the assistance of counsel.  (Doc. # 59 at 14).  Plaintiff argues that Defendants were required to ensure the appointment of counsel before her probation sentence was revoked.  (*Id.* at 15).  After careful review, the court concludes that, because Plaintiff was arrested and imprisoned before she was sentenced to probation, she has not plausibly alleged any Sixth Amendment violation for which JCS or Harpersville may be held liable.

In this case, Plaintiff presents a Sixth Amendment theory of relief similar to that made in other cases against JCS and Alabama municipalities.  Plaintiff charges that the Municipal Court improperly sentenced defendants who could not pay all amounts owed to JCS-supervised probation without imposing a suspended imprisonment sentence.  (*See* Doc. # 6 at ¶¶ 48, 210).  If the Municipal Court had imposed a suspended imprisonment sentence, then the defendants would have been entitled to the assistance of counsel.  *Alabama v. Shelton*, 535 U.S. 654, 662 (2002).  Once sentenced to probation, JCS threatened to seek incarceration of probationers if

---

[11]  To be clear, the court finds no plausible Fourth Amendment claim against any of the Defendants related to Plaintiff's May 2010 arrest.  Nothing in the First Amended Complaint suggests that Plaintiff was under probation supervised by JCS in May 2010.  And, nothing stated in the First Amended Complaint plausibly shows that the arrest was connected to the probation system described in the First Amended Complaint.   Plaintiff alleges that the Municipal Court issued the arrest warrant for her failure to appear (Doc. # 6 at ¶ 67), but, by all indications, Plaintiff failed to appear before the Municipal Court concerning the three citations issued against her.

they did not pay the amounts they owed, even though the probationers were not under any suspended sentence at the time. (Doc. # 6 at ¶ 216). When probationers failed to pay, JCS employees initiated charges against them for violating probation, failing to appear, or failing to obey a court order. (*Id.* at ¶ 218). According to Plaintiff, although probationers faced the possibility of jail sentences at that point, neither JCS nor Harpersville provided access to counsel for the probationers. (*Id.* at ¶ 219).

Plaintiff has not plausibly pled that she suffered a Sixth Amendment violation under this theory. Plaintiff was arrested and incarcerated *before* she was sentenced to probation supervised by JCS.[12] (*Id.* at ¶¶ 67-70, 79-80). While she has stated that she could not pay the amounts demanded by JCS, she has not claimed that JCS instituted charges against her for violating probation, failing to appear, or failing to obey a court order. (*See id.* at ¶¶ 91-92). Nor has she alleged that JCS sought a jail sentence at that time. (*See id.*). Plaintiff alleges that Harpersville issued another arrest warrant, but does not explain whether the warrant contained a cash bond or whether the Municipal Court imposed an imprisonment sentence before the warrant was issued. (*See id.*). And, Plaintiff has not specified whether the second warrant issued against her was for failure to appear, failure to obey a court order, or some other offense unrelated to the scheme alleged in the First Amended Complaint. (*See id.* at ¶ 92). In light of these deficiencies, the court determines that Plaintiff's conclusory allegation of being "unlawfully jailed by Harpersville under this system" is not plausibly supported by her allegations related to her personal experiences with the Municipal Court and JCS. (*Id.* at ¶ 221). Therefore, Plaintiff's Sixth Amendment claims are due to be dismissed.

---

[12] Regardless of whether constitutional violations occurred with respect to Plaintiff's May and June 2010 incarceration stint, Plaintiff has not presented a plausible basis for holding any of the Defendants liable for any such constitutional violation.

### 5. Eighth Amendment Claims

Defendants JCS and Correctional Healthcare argue that the fines and fees imposed by the Municipal Court did not exceed any statutory maximum under Alabama law. (Doc. # 47 at 21). Even if the fines exceeded a statutory maximum, Defendants insist that a violation of such a state law does not constitute a violation of the Eighth Amendment because Plaintiff has not alleged how the fines were grossly disproportionate to her offenses. (*Id.* at 22-23). Defendants further assert that, in any event, they are not liable for any Eighth Amendment violation related to Plaintiff's imprisonment because they did not report false information to the Municipal Court and Plaintiff was not imprisoned because of JCS's actions. (*Id.* at 23). Finally, they contend that nothing pled in the First Amended Complaint can be construed as cruel and unusual punishment. (*Id.* at 23-24).

Plaintiff responds that JCS's probation fees violated the Eighth Amendment because they were not authorized by state law and caused the "actual fines" charged to probationers to exceed the statutory maximum of $500. (Doc. # 59 at 16-17). She contends that JCS relies on non-binding authority to support its claim that its fees were not excessive. (*Id.* at 19-20). In a footnote, Plaintiff states that her arrest warrant was issued pursuant to the joint scheme created by Defendants JCS and Harpersville. (*Id.* at 20 n. 11).

A review of Plaintiff's First Amended Complaint reveals that she claims that three features of the alleged JCS-Harpersville probation system violate the Eighth Amendment: (1) the practice of imposing jail time for mere failures to pay amounts owed to JCS and Harpersville; (2) the practice of charging jail fees to individuals; and (3) the imposition of fines, fees, and costs above the jurisdictional maximum of $500. (Doc. # 6 at ¶¶ 252-53, 257). The court concludes that Plaintiff cannot proceed on any of these Eighth Amendment claims.

### a.    Practice of Imprisoning Probationers for Mere Failures to Pay

Plaintiff's individual Eighth Amendment challenge to Defendants' alleged practice of imprisoning Municipal Court probationers for mere failures to pay cannot proceed because her own allegations belie any inference that she was imprisoned pursuant to such a practice. As described above, Plaintiff has alleged that she was sent to jail under a warrant for failure to appear before the Municipal Court imposed JCS-supervised probation in her case. (Doc. # 6 at ¶¶ 67-71, 80). While Plaintiff alleges that the Municipal Court issued an arrest warrant against her during the probationary period (*id.* at ¶ 92), she does not claim that she was incarcerated due to that warrant. Therefore, this Eighth Amendment claim is due to be dismissed.

### b.    Practice of Charging Jail Fees

The court has found no binding precedent discussing when and whether daily jail fees violate the Eighth Amendment's proscriptions against excessive fines or cruel and unusual punishment. In the absence of binding Eleventh Circuit authority, the court relies on persuasive authority to guide its review of this § 1983 claim. The Third Circuit considered a similar Eighth Amendment challenge to a $10 per day fee in *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410 (3d Cir. 2000). There, the plaintiff-prisoner was charged $10 per day for housing costs in a county correctional facility. *Id.* at 413. The *Tillman* opinion explained that circumstances often exist in prisons where the state is constitutionally required to provide care to prisoners but can, consistent with the Constitution, "seek reimbursement from the party receiving the benefit of the care." *Id.* at 418. The Third Circuit concluded in *Tillman* that the fees at issue did not constitute cruel and unusual punishment under the Eighth Amendment because: (1) the county required the fees "to teach fiscal responsibility to inmates"; (2) the plaintiff was not re-

incarcerated for failure to pay or subjected to an extended sentence; and (3) the plaintiff was not denied any "basic human needs" when he failed to pay the fees. *Id.* at 419.

The *Tillman* court also held that the $10 daily fee was not an excessive fine under the circumstances. *Id.* at 420-21. It observed that the fee might not even qualify as a "fine" because the evidence showed that the fee was charged for rehabilitative purposes, rather than punitive ones. *Id.* at 420. Ultimately, it held that the fine was not grossly disproportionate to the plaintiff's criminal offenses because the $4,000 in fees charged to him was less than five percent of the legally permissible fines. *Id.* at 420-21. Similarly, in different contexts, the Eleventh Circuit has afforded a "strong presumption" of constitutionality to fines within the statutory range of fines prescribed by a representative body. *United States v. 817 N.E. 29th Drive, Wilton Manors, Fla.*, 175 F.3d 1304, 1309 (11th Cir. 1999) (describing the presumption of constitutionality for fines within the range prescribed by Congress).

In this case, as in *Tillman*, Plaintiff has not plausibly pled that the assessed jail fees constituted cruel and unusual punishment. Although the Municipal Court allegedly incorporated the jail fees into its judgments on Plaintiff's traffic offenses (Doc. # 6 at ¶¶ 81-82), she was not re-incarcerated for failure to pay the fees. (*See id.* at ¶ 92) (asserting that an arrest warrant was issued, but not stating whether an arrest occurred). *See also Tillman*, 221 F.3d at 419. Nothing in the First Amended Complaint suggests that the Municipal Court extended a probation sentence or incarceration sentence due to the jail fees. *See Tillman*, 221 F.3d at 419. Finally, Plaintiff has not claimed that Defendants denied her any basic human needs while she was incarcerated at the Shelby County Jail. (*See* Doc. # 6 at ¶¶ 68-70). *See also Tillman*, 221 F.3d at 419. Therefore, even though the purpose of the jail fees is not apparent from the First Amended

Complaint, the court concludes that they cannot plausibly be considered cruel and unusual punishment.

Likewise, Plaintiff's Eighth Amendment challenge to the jail fees does not present a plausible excessive fines claim. Plaintiff has alleged that Harpersville charged her daily jail fees, but she has not stated how much she was charged per day in jail fees or the total amount of jail fees imposed against her. (See Doc. # 6 at ¶¶ 81, 251). Because Plaintiff has not alleged the amount Harpersville charged her in daily jail fees, the court cannot determine whether the jail fees were "grossly disproportional to the gravity of [Plaintiff's] offense[s]," *United States v. Bajakajian*, 524 U.S. 321, 334 (1998), or whether they exceeded the statutory maximum fines for Plaintiff's traffic offenses. *See 817 N.E. 29th Drive*, 175 F.3d at 1309. As a result, Plaintiff's First Amended Complaint fails to state a plausible Eighth Amendment excessive fines claim regarding the jail fees.

### c. Practice of Imposing Fines, Fees, and Costs Beyond Alabama's Jurisdictional Limit

The Eighth Amendment prohibits courts from imposing "excessive fines." U.S. Const. amend. VIII. Its Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" *Austin v. United States*, 509 U.S. 602, 609-10 (1993) (emphasis omitted) (quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989)). In an opinion addressing whether civil punitive damages awards are subject to the Excessive Fines Clause, the Supreme Court explained that "the Excessive Fines Clause was intended to limit only those fines directly imposed by, *and payable to*, the government." *Browning-Ferris*, 492 U.S. at 268 (emphasis added). *See also Coleman v. Watt*, 40 F.3d 255, 263 (8th Cir. 1994) (defining a "fine" as "a payment extracted by the government and payable to the government").

Plaintiff's Eighth Amendment claim for excessive fines, fees, and costs rests on the allegedly unlawful imposition of probation supervision fees. (*See* Doc. # 49 at 16-17). The First Amended Complaint clearly alleges that the monthly fees were demanded by JCS and payable to JCS. (*See* Doc. # 6 at ¶¶ 83, 117, 266). But, because the monthly probation supervision fees in question were payable to JCS, rather than a governmental entity, the fees cannot be considered fines subject to the Excessive Fines Clause. *Browning-Ferris*, 492 U.S. at 268. Thus, Plaintiff's Eighth Amendment claim relating to the probation supervision fees is due to be dismissed.

### 6. Equal Protection Claims

Defendants JCS and Correctional Healthcare argue that the equal protection claims should be dismissed because Plaintiff has not pled Defendants' discriminatory intent or purpose for committing the alleged conduct. (Doc. # 47 at 24). Plaintiff responds that she needs to show that "similarly situated persons were treated dissimilarly." (Doc. # 59 at 20) (quoting *Williams v. City of Montgomery*, 21 F. Supp. 2d 1360, 1365 (M.D. Ala. 1998)). From its review of the First Amended Complaint, the court finds allegations plausibly pleading a discriminatory intent.

To plead an equal protection claim, a plaintiff must allege that a defendant "has engaged in invidious discrimination against him based on race, religion, national origin, poverty[,] or some other constitutionally protected interest." *Damiano v. Fla. Parole & Probation Comm'n*, 785 F.2d 929, 932 (11th Cir. 1986). Here, Plaintiff has pled that the Municipal Court at the core of this matter instituted a policy and practice of not conducting indigency hearings and not allowing offenders to file hardship forms with the Municipal Court. (Doc. # 6 at ¶ 41). Moreover, Defendants allegedly instituted a policy and practice of incarcerating probationers who were unable to meet the financial conditions of probation without conducting willfulness hearings -- required under constitutional law and Alabama state law -- to determine why the

probationers had failed to pay. (*Id.* at ¶ 280). These allegations plausibly indicate individous discrimination against impoverished individuals, especially in light of Plaintiffs' allegation that the Municipal Court did not place any defendant who was able to immediately pay the fines and costs imposed during sentencing on JCS-supervised probation. (*Id.* at ¶ 277). Therefore, the equal protection claims are not due to be dismissed at this stage.

### D. Quasi-Judicial Immunity

Defendants JCS and Correctional Healthcare argue that they are entitled to quasi-judicial immunity because JCS was appointed to carry out functions for the Municipal Court and Plaintiff complains about conduct performed in accordance with judicial orders. (Doc. # 47 at 39-40). Plaintiff responds that quasi-judicial immunity presents factual issues for which discovery is necessary. (Doc. # 59 at 40-41). After careful review, the court finds that JCS is not entitled to quasi-judicial immunity for the § 1983 claims presented in this action because those claims are official capacity claims.

"Absolute quasi-judicial immunity derives from absolute immunity." *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994). Under this immunity doctrine, "[n]onjudicial officials are encompassed by a judge's absolute immunity when their official duties 'have an integral relationship with the judicial process.'" *Id.* (quoting *Ashbrook v. Hoffman*, 617 F.2d 474, 476 (7th Cir. 1980)). To receive quasi-judicial immunity, an official must act within the scope of his or her authority. *Id.* Courts review whether a nonjudicial official receives quasi-judicial immunity "through a *functional* analysis of the action taken by the official in relation to the judicial process." *Id.* (emphasis in original).

As several courts have explained, quasi-judicial immunity is a defense to individual capacity § 1983 suits, but not official capacity suits. *VanHorn v. Oelschlager*, 502 F.3d 775, 779

(8th Cir. 2007) (holding that commissioners for the Nebraska State Racing Commission could not receive quasi-judicial immunity in their official capacities); *Alkire v. Irving*, 330 F.3d 802, 810-11 (6th Cir. 2003) (explaining that a sheriff and county judge could not claim quasi-judicial or qualified immunity for official-capacity § 1983 claims); *Dotzel v. Ashbridge*, 438 F.3d 320, 327 & n. 5 (3d Cir. 2006) (explaining, in a footnote, that official capacity claims against members of a township's board of supervisors are not subject to quasi-judicial immunity, even though the board members were entitled to quasi-judicial immunity in their individual capacities). When a private corporate entity contracts with a public entity to offer functions "traditionally within the exclusive prerogative of the state[,] . . . it becomes the functional equivalent of [a] municipality." *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997). In other words, a suit against such a corporate entity is an official capacity suit. *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985) (explaining that an official capacity § 1983 suit is one "against an entity of which an officer is an agent" and that personal immunity defenses are unavailable in such suits). Here, Plaintiff is not suing Defendants JCS and Correctional Healthcare in an individual capacity; therefore, Defendants cannot seek quasi-judicial immunity.[13] *Cf. Swann v. S. Health Partners, Inc.*, 388 F.3d 834, 837 (11th Cir. 2004) (explaining that the rationale against immunity for municipalities "is applicable in § 1983 suits against non-governmental entities not entitled to qualified immunity"), *overruled on other grounds as explained in Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010).

---

[13] The Middle District of Tennessee recently concluded -- in an analogous action against a for-profit probation servicer and other defendants -- that for-profit corporations are not entitled to claim the defense of quasi-judicial immunity because (1) courts generally have declined to extend immunity to private contractors, (2) the public interest is not served by extending immunity to for-profit entities, and (3) the corporation is not equivalent to the employee of the corporation who performs a task integral to the judicial process. *Rodriguez v. Providence Cmty. Corr., Inc.*, 191 F. Supp. 3d 758, 767-68 (M.D. Tenn. 2016).

### E.    *Rooker-Feldman* **Doctrine**

Defendants JCS and Correctional Healthcare argue that the *Rooker-Feldman* doctrine prevents this court from exercising jurisdiction over this case because Plaintiffs essentially ask the court to invalidate the court orders from the Municipal Court.  (Doc. # 47 at 40).  In response, Plaintiff explains that her First Amended Complaint "challenges constitutional deficiencies in post-judgment actions, not the merits of her underlying conviction."  (Doc. # 59 at 30-31).  She also argues that she requests relief for the probation-related fees charged by JCS, not the court fines and costs assessed by the Municipal Court.  (*Id.* at 32).

In a similar § 1983 case against JCS and another Alabama municipality, the undersigned concluded that the *Rooker-Feldman* doctrine does not preclude the court's exercise of subject matter jurisdiction over the types of constitutional claims at issue in this case.  *See Ray*, 2013 WL 5428395, at *10-11.  For the reasons explained in the *Ray* opinion, Defendants' request to dismiss Plaintiff's § 1983 claims under the *Rooker-Feldman* doctrine is due to be denied.

### F.    *Heck v. Humphrey* **Favorable Termination Rule**

Defendants JCS and Correctional Healthcare claim that "a ruling in the Plaintiff's favor would necessarily imply the invalidity of her probation order given that (1) she directly challenges the lawfulness of that order, and (2) her claim for damages under § 1983 relates explicitly to the amounts paid as fines and fees pursuant to her and others' orders of probation." (Doc. # 47 at 43).  They contend that the Supreme Court's opinion in *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Plaintiffs' § 1983 claims because she has claimed that her probation order was unlawful.  (*Id.* at 41).  Plaintiff responds that *Heck* does not bar her claims because they are unrelated to whether she was guilty or innocent of the underlying offenses.  (Doc. # 59 at 33-35).

And, she claims that *Heck* should not bar her claims because she lacked effective access to habeas relief due to the short term of her imprisonment. (*Id.* at 35-36).

As with Defendants' *Rooker-Feldman* defense, the undersigned considered a similar *Heck* defense in *Ray*. *See Ray*, 2013 WL 5428395, at *8. For the reasons explained in that opinion, Defendants' motion to dismiss Plaintiffs' § 1983 claims under *Heck* is due to be denied.

### G. CHC Companies's Motion to Dismiss

In its motion to dismiss, Defendant CHC Companies first argues that it is an improper defendant because it was not a party to the contract between JCS and Harpersville and it did not assume the duties of that contract. (Doc. # 48 at 4). Second, CHC Companies claims that Plaintiffs cannot proceed against it on an alter ego theory or a vicarious liability theory. (*Id.* at 4-5). Plaintiff responds that CHC Companies is a proper defendant because it controlled JCS's activities and employed JCS personnel after a merger with JCS. (Doc. # 60 at 4-6). In reply, CHC Companies claims that it cannot be held liable for JCS's conduct towards Plaintiff under a joint employer theory because JCS's alleged interactions with Plaintiff occurred before CHC Companies merged with JCS in September 2011. (Doc. # 66 at 3-5). After a thorough review of all the allegations against CHC Companies in the First Amended Complaint, the court finds insufficient allegations to support holding CHC Companies liable for JCS's conduct.

The First Amended Complaint states that CHC Companies was an agent of Harpersville, but it does not indicate whether CHC Companies agreed to the contract that allowed JCS to perform services for the Municipal Court.[14] (*See* Doc. # 6 at ¶¶ 11, 13). The First Amended Complaint alleges that JCS and Correctional Healthcare are "wholly-owned and fully integrated corporations of CHC Companies," but it provides no explanation as to how JCS has been

---

[14] Indeed, the contract that began JCS's relationship with the Municipal Court (which was attached to Plaintiff's original Complaint) was a contract between JCS and Harpersville. (*See* Doc. # 1-2).

integrated into CHC Companies. (*See id.* at ¶ 10). Likewise, the First Amended Complaint states that CHC Companies "jointly employed JCS employees and controlled their operations," but provides no detail whatsoever to explain which JCS employees were joint employees and which JCS operations were controlled by CHC Companies. (*Id.* at ¶¶ 335-37). While the court has permitted other plaintiffs to amend complaints in related suits to add claims for relief against CHC Companies (*see Ray v. Judicial Correction Services, Inc.*, Case No. 2:12-cv-02819-RDP, Doc # 237 at 2), the court discerns no plausible basis for holding CHC Companies liable for the conduct of JCS and/or its employees based on the conclusory allegations presented the First Amended Complaint. Accordingly, CHC Companies's motion to dismiss is due to be granted, and all claims against CHC Companies are due to be dismissed.

## IV. Conclusion

For the reasons explained above, the court concludes that: (1) JCS and Correctional Healthcare's Motion to Dismiss (Doc. # 47) is due to be granted in part and denied in part; (2) CHC Companies's Motion to Dismiss (Doc. # 48) is due to be granted; (3) Harpersville's Motion to Dismiss (Doc. # 49) is due to be granted in part and denied in part; and (4) Harpersville's Motion to Strike Class Allegations (Doc. # 89) is due to be granted. All claims against Defendant CHC Companies are due to be dismissed without prejudice. Counts Three, Four, Five, Six, Seven, Eight, Twelve, Thirteen, Fourteen, Fifteen, and Sixteen of the First Amended Complaint are due to be dismissed without prejudice for failure to state a claim. Finally, Plaintiff's class allegations in the First Amended Complaint are due to be struck as untimely. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this September 21, 2017.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE